**John TOMICICH, Plaintiff-Appellant,**

v.

**WESTERN–KNAPP ENGINEERING COMPANY et al., Defendant-Appellees.**

**No. 23990.**

United States Court of Appeals,
Ninth Circuit.

March 3, 1970.

Wade S. Dahood (argued), of Knight & Dahood, Anaconda, Mont., J. H. Mc-Alear, Red Lodge, Mont., Robert H. Wilson of Wilson, Ayers & Tierney, Hardin, Mont., for appellant.

James E. Purcell (argued), of Meyer & Purcell, Butte, Mont., R. D. Corette, Jr. (argued), of Corette, Smith & Dean, Allen R. McKenzie (argued), of Poore, McKenzie, Roth & Robischon, Butte, Mont., for appellees.

Before HAMLEY, DUNIWAY and ELY, Circuit Judges.

DUNIWAY, Circuit Judge:

John Tomicich appeals from a summary judgment rendered in favor of Western-Knapp Engineering Co., Kaiser Engineering, Link Belt Company, Arthur G. McKee & Co., and Henry J. Kaiser Co.[1] in Tomicich's personal injury suit against them. We affirm.

Tomicich lost his right arm while attempting to clean an accumulation of mud from one of the sheaves running a conveyor belt. Western-Knapp designed and installed the conveyor system; Henry J. Kaiser Co. constructed the system; and Link Belt Co. supplied certain components for the system. Tomicich's theory is that the defendants had a duty to design a safe product and were strictly liable for a breach of that duty, and additionally that the defendants had a duty adequately to instruct Tomicich and his supervisors in the safe removal of mud from the conveyor's sheaves.

On November 4, 1964, Tomicich was working for the Montana Phosphate Co. operating a conveyor belt which served an ore crusher. As he worked, Tomicich noticed that mud was accumulating on one of the sheaves of the conveyor causing the belt to run unevenly and rub against braces in the conveyor structure. He attempted to clear the mud from the sheave by inserting a piece of angle iron approximately 22½″ long into the machine to scrape the surface of the sheave while the machine was running. His arm was somehow caught, and he lost it.

There were three ways to clean the sheave. 1. The way that Tomicich elected by scraping the moving surface of the sheave while the belt was operating.

[1] Plaintiff acknowledges that any liability on the part of Arthur G. McKee & Co. is vicarious and dependent upon a finding that Western-Knapp is liable. Link Belt Co. had nothing to do with the design or manufacture of the conveyor. It merely furnished specified parts to the manufacturer upon request. It was not alleged or shown that any of these parts were defective. During oral argument before this court, counsel for Tomicich conceded that there could be no liability on the part of Link Belt Co.

The machine had been provided with plywood safety covers that enclosed the sheave. This method could not be used with the covers in place. Apparently, they had been removed at the time of the accident, but not by any of the defendants. 2. One could shut down the conveyor and scrape the sheave as it sat motionless. Only a segment of the sheave could thus be cleaned; part of it would be covered by the belt. Although the conveyor could be stopped by use of an emergency cord which ran alongside the belt, it could only be restarted by engaging a switch some 250 feet away. Once the power was shut off, the belt would continue to run on for approximately 30 feet. The result was that a man could stop the machine, clean the exposed portion of the sheave, walk to the switch, engage it, disengage it, and return to the sheave, only to find that he had failed to completely expose the still unscraped surface. Thus cleaning the sheave while it was not running was a laborious and time-consuming process. 3. Two men could do the job, one stationed at the on/off switch and operating it at signals from his partner, the other cleaning the exposed sections of the sheave as they appeared, thus avoiding the long walks and trial and error. On the night of the accident (and presumably all other nights) Tomicich was the only person employed in the vicinity of the conveyor. There is no evidence that he could have found someone to help him with the cleaning job.

Tomicich elected the fastest method for cleaning the sheave. He did this in the face of company rules with which he was familiar, stating that moving equipment was to be shut down before anyone attempted to work on it. He claimed that he feared he would lose his job if he took the much longer time needed. He also claimed that it was no safer to use the stop-start method unless the on/off switch was provided with padlocks, to keep it off while he was work-ing on the equipment. (Company rules also required that moving equipment be locked "out" while work was done on it.) It is not contradicted that on previous occasions Tomicich's supervisors had observed him cleaning this same sheave while it was running, or that no one reprimanded Tomicich or reminded him of the contrary company rule.

Faced with this evidence, the trial court noted that in a suit between Tomicich and his employer the employer might be foreclosed from the defenses of contributory negligence or assumption of risk because it had condoned Tomicich's conduct in the past. But the employer is not a defendant, and the trial court also correctly pointed out that the primary issue in the case was not contributory negligence or assumption of risk, but what duty if any was owed Tomicich by the designers and manufacturers of the conveyor system. For the purpose of making a decision on this matter the trial court assumed that Western-Knapp had been negligent in designing a conveyor system that would collect mud on its sheaves while operating. It also acknowledged the fact that but for the assumed flaw in design there would have been no need to clean and thus no accident. However, the trial court also found, and we agree, that as a matter of law the defendants are not liable to Tomicich.

There is no case law in Montana on the precise point here in question, but there is a general consensus in other jurisdictions that manufacturers are under no duty to guard against or warn of obvious dangers:[2] Campo v. Scofield, 1950, 301 N.Y. 468, 95 N.E.2d 802; Stevens v. Durbin-Durco, Inc., Mo., 1964, 377 S.W.2d 343; Parker v. Heasler Plumbing & Heating Co., Wyo., 1964, 388 P.2d 516; Bradshaw v. Blystone Equip. Co. of Nevada, 1963, 79 Nev. 441, 386 P.2d 396; Tyson v. Long Mfg. Co., 1959, 249 N.C. 557, 107 S.E.2d 170, 78 A.L.R.2d 588; Standard Conveyor Co. v.

2. Under the doctrine of Erie R. R. Co. v. Tompkins, 1937, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the applicable law in the case is Montana law.

Scott, 8 Cir., 1955, 221 F.2d 460; Jamieson v. Woodward & Lothrop, 1957, 101 U.S.App.D.C. 32, 247 F.2d 23; Brown v. General Motors Corp., 8 Cir., 1966, 355 F.2d 814; Evans v. General Motors Corp., 7 Cir., 1966, 359 F.2d 822; Neusus v. Sponholtz, 7 Cir., 1966, 369 F.2d 259; Bowman v. Kaufman, 2 Cir., 1967, 387 F.2d 582.

There is criticism of the *Campo* doctrine, and some commentators have said that the doctrine should apply only when the plaintiff appreciated the danger inherent in the product. (See *e.g.*, 1 Frumer & Friedman, Products Liability § 7.02, p. 115, 1968.) It is possible that a Montana court might extend liability under such a doctrine. However, that would not help Tomicich. Here, Tomicich had to reach a short metal bar into fast moving equipment, from which safety shields had been removed, to scrape a heavy sheave which was turning a massive belt. Tomicich had worked around machines for many years and admitted that he knew there was danger in moving equipment. Tomicich's acts were deliberate. He does not claim that he was surprised by any hidden defect in the conveyor. He voluntarily exposed himself to the known danger of the machine and was injured.

The cases on which Tomicich relies do not help him. Smith v. Hobart Mfg. Co., 3 Cir., 1962, 302 F.2d 570 stands for the rule that an employee cannot recover from a manufacturer when his employer has removed a safety guard from a machine. De Eugenio v. Allis-Chalmers Mfg. Co., 3 Cir., 1954, 210 F.2d 409 and Allis-Chalmers Mfg. Co. v. Wichman, 8 Cir., 1955, 220 F.2d 426 were cases in which the manufacturer demonstrated the machine, showing the injured party how to use it, the method being dangerous. Tracy v. Finn. Equip. Co., 6 Cir., 1962, 310 F.2d 436; Hyatt v. Hyster Co., S.D.N.Y., 1952, 106 F.Supp. 676; Greeno v. Clark Equip. Co., N.D.Ind., 1965, 237 F.Supp. 427; Vargas v. Barco Mfg. Co., 1962, 205 Cal.App.2d 246, 22 Cal.Rptr. 737 all involved latent, nonobvious defects. Brandon v. Yale & Towne Mfg. Co., E.D.Pa., 1963, 220 F. Supp. 855 involved failure by a manufacturer to provide safety protection on a dangerous machine. South Austin Drive-In Theatre v. Thomison, Tex.Civ. App., 1967, 421 S.W.2d 933 and Bengford v. Carlem Corp., Iowa, 1968, 156 N.W.2d 855 involved injuries to children. In Wagner v. Larson, 1965, 257 Iowa 1202, 136 N.W.2d 312, the only way to start a loader, which frequently stuck, was to pull it from the front, with the power on. In our case, there were safe ways to clean the sheave.

Affirmed.