**Sterling JACKSON, Plaintiff-Appellant,**

**v.**

**COAST PAINT AND LACQUER COMPANY, a corporation, and Reliance Universal Incorporated, a corporation, Defendants-Appellees.**

No. 72-2078.

United States Court of Appeals,
Ninth Circuit.

July 1, 1974.

John J Cavan, Jr. (argued), Sandall, Moses & Cavan, Billings, Mont., for plaintiff-appellant.

Waymouth D. Symmes, (argued), Anderson, Symmes, Forbes, Peete & Brown, Billings, Mont., for defendants-appellees.

Before MERRILL and ELY, Circuit Judges, and ZIRPOLI,* District Judge.

## OPINION

MERRILL, Circuit Judge:

In this diversity case plaintiff seeks to recover from a manufacturer-seller of paint for personal injuries which he claims resulted from failure of the manufacturer to warn adequately of the product's dangerous characteristics. The case was presented to a jury on a theory of strict liability.[1] The jury returned a general verdict for the defendant. On this appeal plaintiff challenges the correctness of the district court's instructions to the jury on two issues: the nature of the defendant's duty to warn, and the defense of contributory negligence. Concluding that there was indeed error in these instructions, we reverse.

In 1964 plaintiff, a citizen of Utah, was a journeyman painter employed by a Utah painting contractor. His employer entered into a contract with a Montana manufacturing company to paint some railroad tank cars that were to be used for the shipment of bulk quantities of honey. Plaintiff was sent by his employer to Billings, Montana, to do the work.

The paint used to coat the inside of the tank cars, "Copon EA9," was manufactured and sold by defendant Reliance Universal, Inc., a Texas manufacturer of industrial paints and coatings. It is an epoxy paint which is highly flammable. While plaintiff was spray painting the inside of one of the tanks a fire occurred and he was very severely burned. The fuel of the fire consisted of the paint fumes which had accumulated in the tank. The cause of ignition is uncertain and was a disputed issue at trial. There was some evidence that it was caused by breakage of a light bulb used by plaintiff in the tank. This is the theory favored by defendant. There was other evidence, mainly expert testimony including an experiment-demonstration, to the effect that the fire could have been touched off by static electricity, perhaps generated by the friction of the rubber soles of plaintiff's shoes on the tank floor. This is the theory favored by plaintiff.

An officer of Reliance testified that Reliance was aware of the fact that Copon EA9 is hazardous if not properly used under proper conditions. Two hazards are recognized to be associated with use of the paint: breathing the toxic vapors, and fire.

The label on the paint used by plaintiff was introduced into evidence. It contains a warning which first refers to the toxicity of the paint if ingested, and then states:

"Keep away from heat, sparks, and open flame. USE WITH ADE-

---

* Honorable Alfonso J. Zirpoli, United States District Judge for the Northern District of California, sitting by designation.

1. It was also presented on a theory of negligence. However, plaintiff here asserts no error respecting the negligence count.

QUATE VENTILATION. Avoid prolonged contact with skin and breathing of spray mist. Close container after each use. KEEP OUT OF REACH OF CHILDREN."

Plaintiff testified that he and other painters of his acquaintance understood the warning regarding adequate ventilation to refer only to the danger of breathing toxic vapors. While painting the tanks he had contrived and used a tube and mask which enabled him to breathe fresh air from outside the tank. Otherwise plaintiff took no precautions in the nature of "ventilation." He testified that he had been unaware of the possibility that flammable vapors permitted to accumulate in a closed, inadequately ventilated area could be touched off by a spark resulting in a fire or explosion. There was, however, other evidence that some persons in plaintiff's company were aware that such a danger existed.

This court has held, "In the absence of controlling decisions of the Montana Supreme Court, the District Court properly looked to and adopted * * * the Restatement of the Law of Torts, 2d, as the law of Montana." Jacobson v. Colorado Fuel & Iron Corp., 409 F.2d 1263, 1270 (9th Cir. 1969); *accord*, Davis v. Wyeth Laboratories, Inc., 399 F.2d 121, 127 (9th Cir. 1968). In most respects the instructions to the jury did comport with the law as set forth in the Restatement (Second) of Torts (1965) and other relevant authorities. However, in two respects they failed to state the law correctly; and they failed in a manner which may have been, on the evidence presented, highly prejudicial to the plaintiff.

1.  *The duty to warn instruction*

In the Restatement under Chapter 14, "Liability of Persons Supplying Chattels for the Use of Others," Topic 5, "Strict Liability," § 402A provides:

"Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Comment *i* under this section states in part:

"*Unreasonably dangerous.* The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. * * * The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

It is not essential to strict liability that the product be defective in the sense that it was not properly manufactured. If the product is unreasonably dangerous that is enough. Davis v. Wyeth Laboratories, Inc., 399 F.2d 121 (9th Cir. 1968). A product may be perfectly manufactured and meet every requirement for its designed utility and still be rendered unreasonably dangerous through failure to warn of its dangerous characteristics. Davis v. Wyeth Laboratories, Inc., *supra*.

812

Comment *j* to § 402A states in part:

"*Directions or warning.* In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. \* \* \*

But a seller is not required to warn \* \* \* when the danger, or potentiality of danger, is generally known and recognized."

The district court's instructions to the jury included the following:

"[D]efendant had a duty to supply plaintiff or his employer with proper and adequate directions for the use of the paint and proper and adequate warnings concerning the dangers inherent in the paint.

\*   \*   \*   \*   \*   \*

If the defendant had reason to believe that plaintiff or his employer knew or would discover the hazards inherent in the paint, then defendant had no duty to warn plaintiff or his employer of these dangers."

■ In our judgment this instruction was erroneous in three respects.

*First.* It suggests that liability is based on negligence rather than strict liability. (It is in fact patterned upon § 388(b) of the Restatement, which sets forth the elements of liability on the part of a supplier of a chattel for *negligent* failure to warn of dangers known to the supplier.) In strict liability it is of no moment what defendant "had reason to believe." Liability arises from "sell[ing] any product in a defective condition unreasonably dangerous to the user or consumer." It is the unreasonableness of the condition of the product, not of the conduct of the defendant, that creates liability.

*Second.* Plaintiff has contended that a more specific warning of the fire hazard ought to have been given, namely, that accumulated fumes or vapors in an inadequately ventilated area may be ignited by a spark resulting in a violent fire or explosion. His position is that the absence of such a specific warning rendered the paint as marketed by the defendant "unreasonably dangerous to the user or consumer"; in other words, that there was a "duty to warn" of the particular hazard. Defendant contends, in this regard, that it had no duty to warn of this particular hazard because, in the words of comment *j* to § 402A, "the danger, or potentiality of danger, is generally known and recognized."

■ On the evidence presented, this was an issue for the jury. The challenged instruction, however, presents the wrong issue. It is not the knowledge actually possessed by the plaintiff, individually, that determines whether the absence of warning renders a product unreasonably dangerous. The subjective knowledge of the plaintiff becomes relevant upon the issue of contributory negligence, as we explain below. On the issue of duty to warn, however, the question to be put to the jury is whether "the danger, or potentiality of danger, is *generally* known and recognized"; whether the product as sold was "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with *the ordinary knowledge common to the community* as to its characteristics." Restatement § 402A, comments *j, i* (emphasis added).

■ *Third.* The most serious error in the challenged instruction is the statement that knowledge of the hazard on the part of plaintiff's *employer* would obviate any duty to warn plaintiff. Besides improperly focusing on the knowledge of an individual rather than general or common knowledge, this erroneously conceives the "community" whose common knowledge the jury is to ascertain. The seller's duty under § 402A is to "the ultimate user or consumer." At least in the case of paint sold in labeled containers, the adequacy of warnings must be measured according to whatever knowledge and understanding may be common to painters who will actually open the containers and use the paints;

the possibly superior knowledge and understanding of painting contractors is irrelevant.

The general principle can be illustrated by comparing to this case two cases relied upon by defendant: Hopkins v. E. I. DuPont de Nemours & Co., 212 F.2d 623 (3d Cir.), cert. denied, 348 U.S. 872, 75 S.Ct. 108, 99 L.Ed. 686 (1954), and Jacobson v. Colorado Fuel & Iron Corp., 409 F.2d 1263 (9th Cir. 1969). In *Hopkins* plaintiff's decedent was killed when he placed a stick of dynamite manufactured by the defendant into a freshly drilled hole in a rock which had not been allowed to cool; the heat generated by the drilling set off the charge. Hopkins contended that the defendant manufacturer had a duty to warn of this particular hazard. The court of appeals held that there was no such duty because, as shown by the testimony of the decedent's own foreman, the danger was well known to those who supervise blasting operations.[2]

In *Jacobson* plaintiff's decedent was killed when steel strand manufactured by the defendant broke during a procedure in the manufacture of prestressed concrete by the decedent's employer. Plaintiff contended that the defendant had inadequately warned the decedent of the particular danger of overstressing the strand. The decedent had been a foreman, whose work was done under the supervision and direction of several superiors. One of them, the production coordinator, admitted knowledge of the relevant danger. There was testimony of other experts in the field that the danger was well known. On these facts this court followed *Hopkins*. 409 F.2d at 1273.[3] We adopted the trial court's conclusions of law:

" 'Where a supplier furnishes chattels, *the use of which is to be directed by technicians or engineers*, it is sufficient to insulate the supplier from liability for failure to warn if the warnings given are sufficient to apprise the engineers or technicians of the dangers involved, or if the technicians have knowledge of the dangers involved. There is no duty to warn *those who simply follow the directions of the engineers or techicians* * * *.' "

409 F.2d at 1273 (emphasis added).[4]

There are important distinctions between products such as the dynamite involved in *Hopkins* or the steel strand in *Jacobson* and the paint involved here. Paint is not a product "the use of which is to be directed by technicians or engineers." Further it is a product so dis-

---

2. With *Hopkins* compare Eck v. E. I. DuPont de Nemours & Co., 393 F.2d 197 (7th Cir. 1968). Plaintiff Eck, a laborer, was injured because he was standing too close to a blast of dynamite purchased from defendant and detonated by plaintiff's foreman. He alleged that failure to warn of the minimum safe distance was the cause of his injury. Defendant had included instructions in each carton of dynamite referring to safety measures generally and stating that a more detailed pamphlet on safety was available free to purchasers on request. Reversing summary judgment for the defendant, the court held that a jury question was presented whether this method gave "reasonable assurance that the information will reach those whose safety depends upon their having it," quoting Restatement § 388, comment *n*.

3. With *Jacobson* compare West v. Broderick & Bascom Rope Co., 197 N.W.2d 202, 211–

212 (Iowa 1972), where the court held that it was for the jury to decide whether a supplier of a wire rope sling had discharged his duty to warn regarding the strength of the rope by supplying information to the employer, or whether instead the supplier should have used some means of attaching this information to the rope itself in order to warn directly ironworkers who would use the product. *But cf.* McKay v. Upson-Walton Co., 317 F.2d 826 (7th Cir. 1963).

4. While *Jacobson* can be read as focusing on the knowledge actually possessed by the particular supervising personnel involved in determining whether a duty to warn existed, we do not so read it. From the facts it appears that the knowledge had by the supervising personnel of the defendant was shared by such personnel in the industry generally and thus was "ordinary knowledge common to the [relevant] community."

814·

pensed that warning to the ultimate consumer can readily be given.

Restatement § 388, comment *n*, states:

"Giving to the third person through whom the chattel is supplied all the information necessary to its safe use is not in all cases sufficient to relieve the supplier from liability. It is merely a means by which this information is to be conveyed to those who are to use the chattel. The question remains whether this method gives reasonable assurance that the information will reach those whose safety depends upon their having it. * * *

Many such articles can be made to carry their own message *to the understanding of those who are likely to use them* * * * by a label or other device, indicating with a substantial sufficiency their dangerous character. Where the danger involved in the ignorant use of their true quality is great and such means of disclosure are practicable and not unduly burdensome, it may well be that the supplier should be required to adopt them." (emphasis added).

*See also* Note, The Manufacturer's Duty to Warn of Dangers Involved in Use of a Product, 1967 Wash.U.L.Q. 206, 209–210.

A distinction analogous to the one we draw here—between packaged paint, on the one hand, and bulk steel strand or dynamite, on the other—was made in Davis v. Wyeth Laboratories, Inc., 399 F.2d 121, 130–131 (9th Cir. 1968). There we noted that in the case of a prescription drug, normally a warning of dangers given to the physician is sufficient; but we held that when a drug was distributed "to all comers at mass clinics without an individualized balancing by a physician of the risks involved," a warning sufficient to apprise the patient himself of the risks was mandated.

Accordingly we hold that the duty to warn runs, on these facts, directly to the painter, and is not discharged when the employer alone is informed of the danger.

2. *The contributory negligence instruction*

The extent to which the defense of contributory negligence is available in actions of this nature is stated in comment *n* under § 402A of the Restatement:

"Contributory negligence. Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."

The district court's instructions on contributory negligence included the following:

"If the plaintiff or his employer had knowledge and was aware of the fact that the paint in question was potentially hazardous and nevertheless proceeded unreasonably to make use of the product, or made an improper use of the product, and was injured as a result, he is barred from recovery."

■ Here again the court erred in according significance to knowledge of

plaintiff's employer. There can be contributory negligence which bars recovery only if plaintiff, the "user or consumer," was aware of and unreasonably embraced the danger. It is manifest not only in the passage quoted but also from all other parts of the Restatement dealing with contributory fault that "the form of contributory negligence which * * * commonly passes under the name of assumption of risk" must be subjective, conscious, and personal to the plaintiff. *See* § 466(a) and comments *c* and *d*; §§ 496A-G, especially § 496D and comment *c*. Such negligence plainly cannot be "imputed" to the plaintiff from another. *See* § 485. Therefore any knowledge plaintiff's employer may have had concerning the hazard which resulted in plaintiff's injury is irrelevant, where the employer did not in fact communicate any superior knowledge to plaintiff prior to the accident. This would be true even if the employer himself had an independent legal duty to warn plaintiff. *See* Yale & Towne, Inc. v. Sharpe, 118 Ga.App. 480, 164 S.E.2d 318, 327 (1968); Polovich v. Sayers, 412 S.W.2d 436, 440 (Mo.1967); Restatement § 396 and comment *b* and illus. 2.[5]

Here, on the evidence presented, the jury might have found as fact that the label on the paint was insufficient to warn of dangerously flammable characteristics; that there was no common knowledge of such characteristics in the community of which plaintiff was a part; and that lack of warning thus rendered Copon EA9 unreasonably dangerous; that while plaintiff himself had no such knowledge plaintiff's employer, the painting contractor, did have extrinsic knowledge of the dangerous characteristics of Copon EA9. Under the instructions of the court such findings would require judgment for the defendant. We conclude that this was error.

Reversed and remanded for new trial.

5. Tomicich v. Western-Knapp Engineering Co., 423 F.2d 410 (9th Cir. 1970), does not avail defendant on this point. There it was clear that the *plaintiff* "voluntarily exposed himself to the known danger of the machine and was injured." 423 F.2d at 413.