No. 13706

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

DEANE BROWN,

Plaintiff and Respondent,

-vs-

NORTH AMERICAN MANUFACTURING COMPANY,

Defendant and Appellant.

---

Appeal from: District Court of the Eleventh Judicial
District,
Honorable Robert Sykes, Judge presiding.

Counsel of Record:

For Appellant:

Murphy, Robinson, Heckathorn and Phillips, Kalispell,
Montana
I. James Heckathorn argued, Kalispell, Montana

For Respondent:

Morrison, Hedman and Trieweiler, Whitefish,
Montana
Frank B. Morrison, Jr. argued, Whitefish, Montana

McGarvey, Lance and Heberling, Kalispell, Montana

---

Submitted: September 28, 1977

Decided: FEB 9 - 1978

Filed: FEB 9 - 1978

_Thomas Je Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court:

Plaintiff Deane Brown lost his left leg in the auger of a self-unloading feed wagon known as a "Grain-O-Vator", manufactured by defendant North American Manufacturing Co., an Iowa corporation. In his original complaint, plaintiff specified negligence and strict liability in tort as theories supporting a damage recovery.

The trial of the cause ultimately proceeded on the strict liability theory alone. Discovery consisted of depositions of the parties and certain anticipated witnesses for plaintiff. The case was tried before a jury in the District Court, Flathead County, beginning October 19, 1976. The jury returned a verdict for plaintiff in the amount of $318,167 and judgment was entered thereon. Defendant then filed motions for judgment notwithstanding the verdict or alternatively, for a new trial. The District Court denied both motions. Defendant appeals from the judgment and denial of its post-trial motions.

For reasons set forth in this opinion, we find no errors were committed requiring either reversal of the judgment, a new trial or imposition of judgment notwithstanding the verdict.

The facts are:

In November 1970, plaintiff Deane Brown purchased a piece of farm equipment known as a Grain-O-Vator. The feed machine was approximately one year old at the time of purchase. The machine was manufactured by defendant North American Manufacturing Co.

During the next three years, the equipment was operated and serviced by plaintiff's son, Calvin Brown. Plaintiff used the machine a few times prior to the accident involved here.

The central function of the Grain-O-Vator is feed unloading and distribution. The feed contained in a large bin drops through an opening into a transfer auger, and is moved to an area where it is picked up and expelled through a spout. Attached to the bin, just over the transfer auger, is a curved metal door known as an "excess door". The door was hinged at the bottom on the particular model owned by plaintiff, and was held closed at the top by two springs. The purpose of the excess door was to provide a "relief valve". When excess feed pressure is exerted against the transfer auger, the door is forced open, and the excess feed pressure relieved. The feeder is operated by a power-take-off system, when attached to a tractor.

Just prior to the accident plaintiff, an experienced farmer/rancher, 51 years of age, was operating the feeder. The feed had ceased coming out of the spout. Plaintiff descended from the tractor and left the power-take-off system running, to observe if any mechanical problem existed. His intent was to first view the interior of the bin. There was no ladder or other means provided on the machine for access to a view of the bin. The height of the bin had been increased by extension boards furnished by defendant.

Plaintiff mounted the machine by first placing his right foot on an iron reinforcement bar to the side of the transfer auger; then placed his left foot on the excess door covering the transfer auger. For his third step, he placed his right foot on a "gusset" just above and to the right of the excess door, with his left foot in the air above the excess door. Plaintiff observed feed in the bin, stepped down with his left foot, without

looking down, intending to again place it on the excess door. The excess door had come open and, as a result, plaintiff stepped directly into the transfer auger. His left leg was pulled in and amputated by the mechanism. Plaintiff was alone and remained caught in the machine for some time before he was taken out and given medical aid.

At trial, plaintiff testified that during his prior limited experience with the machine, the excess door had not come open. While recognizing the area surrounding the excess door would be dangerous if the excess door were open, he stated he had no expectation the door would simply "come open" and felt that the auger area, as covered, was not dangerous. Plaintiff further testified that no warning concerning the excess door appeared anywhere on the Grain-O-Vator.

Carlton Zink was the plaintiff's expert witness. He has a Bachelor of Science degree in agricultural engineering from the University of Nebraska. Later he served for 12 years in charge of the tractor testing labratory in Lincoln, Nebraska. From 1950 to 1968, he worked for John Deere Company and after 1952 he "took on the responsibility for product safety for John Deere as a corporate representative in product safety." He worked with the National Safety Council on "farm safety" and was a president of the Farm Conference. He was a member of the National Institute for Farm Safety, the American Society of Agricultural Engineers, the Society of Automotive Engineers and the National Safety Council. From 1952 to 1968, he was involved with the development of safety design for John Deere Company.

Zink testified the American Society of Agricultural Engineers recognized the need to effectually shield augers as early as

1964 or even 5 years earlier. Further, the Grain-O-Vator in question failed to conform to accepted safety design requirements in three particulars, rendering the equipment unreasonably dangerous to the user: 1) The lack of effective shielding of the transfer auger because of the excess door being hinged at the bottom, and much more susceptible to entry when open. 2) No ladder or other means was provided for gaining visual access to the bin. 3) No danger warnings appeared on the equipment or in the instruction manuel.

An expert called by defendant was of the opinion the Grain-O-Vator was not defectively designed.

The owner and principal officer of defendant, Elmer K. Hanson, testified he had designed the excess door. He indicated that prior to 1958, the door had been hinged at the top, but the design was modified so the door was hinged at the bottom in later models for added utility. He further stated that at the present time, the Grain-O-Vator is marketed with the excess door bolted on firmly and it cannot come open without manual removal. He admitted the Grain-O-Vator displayed no warnings, and no ladder or other access to a view of the interior of the bin was provided. However, he consistently maintained the machine was nondefective, and satisfied industry safety standards.

Various exhibits were admitted throughout the course of the trial consisting primarily of pictures and diagrams of the Grain-O-Vator, and a movie introduced by plaintiff demonstrating the steps taken by plaintiff as he mounted and attempted to dismount the Grain-O-Vator, as portrayed by his son Calvin. The jury was also afforded an opportunity to view

the particular Grain-O-Vator involved in the accident. At the close of the testimony and ensuing arguments, a jury verdict was returned in plaintiff's favor.

We summarize the issues raised on this appeal:

1) Was there sufficient evidence to support a finding the product was in a "defective condition unreasonably dangerous to the user or consumer?"

2) Was there sufficient evidence to support a finding that an unreasonable danger or hazard existed which required a warning?

3) Was there sufficient evidence to support a finding that the alleged defective condition was a proximate cause of injury to plaintiff?

4) Did plaintiff, by his actions, assume the risk as a matter of law?

5) Did the District Court err in giving its instruction on the law of assumption of the risk?

6) Did the District Court err in giving its instruction concerning the elements of proof in a strict liability action?

7). Did the District Court err in admitting into evidence the movie prepared and offered by plaintiff?

Issue 1. Defendant contends the evidence adduced at the trial failed to satisfy the elements of a strict liability action as set forth in 2 Restatement of Torts 2d, §402A. Rather, it is maintained, the sole conclusion supported by the evidence is that the danger was "open and obvious" to plaintiff and therefore a complete bar to recovery. In support of the latter contention, defendant relies on the holding of cases from certain jurisdictions that a product is not "defective" or "unreasonably dangerous" if the danger occasioned by its use is open and obvious to

- 6 -

the user. Tomicich v. Western-Knapp Engineering Company, (9th
Cir. 1970), 423 F.2d 410; Morrow v. Trailmobile Inc., (1970),
12 Ariz.App. 578, 473 P.2d 780; Zahora v. Harnischfeger Corp.,
(7th Cir. 1968), 404 F.2d 172; Halpern v. JAD Const. Corp.,
(1960), 27 N.Y.Misc.2d 675, 202 N.Y.S.2d 945.

This Court, in Brandenburger v. Toyota Motor Sales, U.S.A.,
Inc., (1973), 162 Mont. 506, 513, 513 P.2d 268, adopted the
core definition of the doctrine of strict liability, set forth
in 2 Restatement of Torts 2d, §402A:

"'(1) One who sells any product in a defective
condition unreasonably dangerous to the user or
consumer or to his property is subject to liability
for physical harm thereby caused to the ultimate
user or consumer, or to his property, if

"'(a) the seller is engaged in the business of
selling such a product, and

"'(b) it is expected to and does reach the user
or consumer without substantial change in the condi-
tion in which it is sold.

"'(2) The rule stated in Subsection (1) applies
although

"'(a) the seller has exercised all possible care
in the preparation and sale of his product, and

"'(b) the user or consumer has not bought the
product or entered into any contractual relation
with the seller.'" 162 Mont. 513.

In order to establish a prima facie case in strict liability,
based upon the above definition, a plaintiff must prove the
following elements:

(1) The product was in a defective condition, unreasonably
dangerous to the user or consumer;

(2) The defect caused the accident and injuries com-
plained of; and

(3) The defect is traceable to the defendant.

Following the well-established rule in this regard, this
Court has stated that a defect in a products liability case

may be shown by circumstantial as well as direct evidence. Brandenburger v. Toyota Motor Sales U.S.A., Inc., supra; Pierce v. Ford Motor Co., (1951), 190 F.2d 910, cert.denied 342 U.S. 887, 72 S.Ct. 178, 96 L ed 666; Henningsen v. Bloomfield Motors Inc., (1960), 32 N.J. 358,161 A.2d 69, 75 ALR2d 1. In such a case, the defect might well be established through proof of the circumstances of the accident, a prior history of occupational difficulties, similar occurrences under certain circumstances, and elimination of alternative causes, including plaintiff's own conduct. The reasoning behind imposition upon a plaintiff of the more flexible standard of proof was recognized in Brandenburger:

> "The essential rationale for imposing the doctrine of strict liability in tort is that such imposition affords the consuming public the maximum protection from dangerous defects in manufactured products by requiring the manufacturer to bear the burden of injuries and losses enhanced by such defects in its products. If this be so, it requires little imagination to see that if a strict rule of direct evidence was required, the supposed benefit of the theory of strict liability would be lost to the consuming public." 162 Mont. 517.

Recognition of a more flexible rule of evidence does not thereby convert strict liability into absolute liability. Ordinarily, a plaintiff will not sustain his burden of proof by merely establishing the fact of the occurrence of an accident. Dunham v. Vaughan & Bushnell Mfg. Co., 42 Ill.2d 339, 247 N.E.2d 401 (1969). Imposition upon a plaintiff of the burden of showing a traceable defect, causation and damage or injury assures an appropriate limitation to a manufacturer's liability.

Defendant here advances the "open and obvious danger" or "patent-latent" rule as a bar to plaintiff's recovery under the theory of strict liability. We reject such a rule. Recent

- 8 -

authorities in other jurisdictions that previously adopted the rule have now abolished it in persuasive, well reasoned opinions.

The "open and obvious danger" rule is not contained in 2 Restatement of Torts 2d, §402A nor in the comments thereto. It derives from the New York case Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950), and thereafter found acceptance in various jurisdictions. Strict liability cases relying on the "open and obvious danger" rule have typically done so upon the express authority of Campo. See: Morrow v. Trailmobile, Inc., supra.

However, the New York Court of Appeals has recently abandoned the "patent-latent" distinction. Micallef v. Miehle Co., Div. of Miehle-Goss Dexter, Inc., 39 N.Y.2d 376, 348 N.E. 2d 571 (1976). Arizona has rejected the authority of Morrow, relied on by defendant. Byrns v. Riddell, Inc., 113 Ariz. 264, 550 P.2d 1065 (1976). In so doing, the Arizona Supreme Court stated:

> "* * * We do not subscribe to this 'patent-latent' distinction in the context of a manufacturer's strict liability in tort. Its only function is to encourage patent design defects." 550 P.2d 1068.

In Dorsey v. Yoder Company, (E.D.Pa. 1971), 331 F.Supp. 753, the plaintiff suffered injuries to his hand when he placed it upon a piece of metal near the unshielded opening of a metal slitter, and was accidentally propelled into the machine. The defendant argued, in part, that plaintiff be barred from recovery due to the open and obvious character of the danger. The Dorsey court, after discussing the split of authority on the issue, rejected the "open and obvious danger" rule, holding:

"\* \* \* Therefore, we hold that even though the danger of unguarded rotary blades was obvious to plaintiff, this does not ipso facto preclude recovery."  331 F.Supp. 759.

We note the Ninth Circuit case Tomicich v. Western-Knapp Engineering Co., supra, relied on by defendant, does not in fact deny recovery on the basis of the "open and obvious danger" rule.  In Tomicich, Judge Russell E. Smith, while referring to various decisions supporting the "open and obvious danger" rule, including Campo, and noting that this Court has made no specific ruling on the question, suggests this Court might well be impressed with the criticism voiced against the rule.  Liability was clearly denied on other grounds.

We reject any rule which would operate to encourage misdesign.  The fact that a danger is patent does not prevent a finding the product is in a defective condition, unreasonably dangerous to the particular plaintiff.  Rather, the obvious character of a defect or danger is but a factor to be considered in determining whether the plaintiff in fact assumed the risk.

The evidence in the instant case, however, tends to support a finding that the danger was hidden, rather than open and obvious, as it was concealed below the excess door.  Plaintiff testified he seldom used the Grain-O-Vator and had never personally serviced the equipment. Particularly revealing in this regard is the following testimony of plaintiff, given upon direct examination:

"Q.  Did you realize that door and the auger there as being a dangerous area?  A.  No.

"Q.  You did not?  A.  No.

"Q.  Why not?  A.  Because it was covered.

- 10 -

"\* \* \*

"Q. Did you know prior to this accident, was the lid on this thing bolted down or whether it flipped up or anything about it? A. No.

"Q. Prior to the time of the accident, did you know how the lid fastened to the machine? A. I knew it was hinged.

"Q. Did you know whether it was bolted at the top or latched at the top or anything about that? A. No.

"Q. No what? A. I did not know whether it was or whether it wasn't."

Further, plaintiff's expert, Carlton Zink, testified the hazard or danger was, in his opinion, hidden. Defendant's reliance on the "open and obvious danger" rule is thus misplaced.

Here, plaintiff testified the fact the auger was shielded prevented him from expecting the injurious potential of the auger. It is unclear as to how the excess door came open. However, the salient fact remains the excess door did come open, in such a manner and under such conditions as to expose plaintiff to an unreasonable danger.

The jury was presented with ample evidence of design defects which rendered the Grain-O-Vator unreasonably dangerous. Carlton Zink enumerated three specific design defects, based upon industry safety standards: (a) failure to hinge the excess door at the top, (b) failure to warn of the hazard, and (c) failure to provide steps or other access for mounting the equipment. When asked for his opinion as to whether the effect of the defects was to render the machine unreasonably dangerous, the expert responded in the affirmative.

We hold plaintiff clearly met the burden of proof for a strict liability action, in proving a defect rendering the product

unreasonably dangerous. Plaintiff's evidence, while to some extent in conflict with certain evidence offered by defendant, was sufficient for submission to the jury. We refuse to disturb the jury's findings in this respect.

Issue 2. In accordance with its prior argument, defendant also asserts it was not under a duty to warn of any danger associated with use of the Grain-O-Vator. In support of this contention, defendant advances the position there is no duty to warn of a danger which is obvious or of which the user has knowledge.

As pointed out heretofore, the evidence strongly supports the conclusion the danger was in fact hidden, and plaintiff had no subjective knowledge or awareness of the particular danger. Plaintiff's expert in fact listed the failure to warn as a defect itself. Given such evidence, it was well within the power of the jury to conclude the danger was hidden and unknown to plaintiff, and a warning should have been given.

Defendant also contends the product was not defective or unreasonably dangerous because it was functioning precisely as intended at the time of the accident. This contention is without merit.

It has been held that a failure to warn of an injury causing risk associated with use of a technically pure and fit product can render such product unreasonably dangerous. Davis v. Wyeth Laboratories, Inc., (9th Cir. 1968), 399 F.2d 121. In further expending the application of the Davis rule, the Ninth Circuit Court of Appeals in Jacobson v. Colorado Fuel & Iron Corporation, (9th Cir. 1969), 409 F.2d 1263, stated:

> "* * * Davis distills the essence of the rule to be
> that the manufacturer is under a duty to warn of
> dangers in 'non-defective' but potentially harmful
> products. * * * if the product is unreasonably
> dangerous and a warning should be given, but is not

given, then the product is automatically 'defective' * * *."  409 F.2d 1271.

Issues 3 and 4.  Defendant next contends there was insufficient evidence that the alleged defect was the proximate cause of plaintiff's injury.  Rather, it is maintained the evidence demonstrates plaintiff's own conduct was the proximate cause of his injuries, such that plaintiff assumed the risk as a matter of law.  We disagree.

A showing of proximate cause is a necessary predicate to plaintiff's recovery in strict liability.  Strict liability is, of course, not complete "liability without fault" in the sense that it is absolutely immune to considerations of plaintiff's conduct.  That character of plaintiff's behavior which breaks the chain of causation and operates to bar recovery is described in 2 Restatement of Torts 2d, §402A, Comment (n):

> "* * * Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."

We find the above standard/conduct of the plaintiff as related to the injury must be considered under the Montana case law on the assumption of risk when applied to strict liability cases.  In the past Montana cases have not been consistent in distinguishing between the subjective standard required in the defense of assumption of risk, and the objective standard necessary to a contributory negligence defense.  As Judge Jameson held in Deeds v. United States, 306 F.Supp. 348, 363 (1969):

"While the defense of assumption of risk is usually asserted in employer-employee cases, in Montana the defense has been extended to 'relationships independent of the master-servant relationship'. Cassaday v. City of Billings, 1959, 135 Mont. 390, 392, 340 P.2d 509, 510 and cases there cited. Assumption of risk is governed by the subjective standard of the plaintiff rather than the objective standard of the reasonable man. * * *"

Henceforth, in product liability cases the defense of assumption of risk, will be based on a subjective standard rather than that of the reasonable man test.

The attributes of the defense of assumption of the risk in the context of strict liability are intelligently phrased and developed in Dorsey v. Yoder Company, supra:

"* * * In addition to realizing the existence of the defect or danger and voluntarily doing an act which exposes him to it, the plaintiff must perceive and appreciate the risk involved, i.e., the probability of harm. * * *" 331 F.Supp. 765.

Quoting 2 Restatement of Torts 2d, §496D, Comment (c), the court in Dorsey continued:

"'The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory negligence. * * * If by reason of age or lack of information, experience, intelligence or judgment, the plaintiff does not understand the risk involved in a known situation, he will not be taken to assume the risk, although it may be found that his conduct is contributorily negligent because it does not conform to the community standard of the reasonable man.'" 331 F.Supp. 765.

The Ninth Circuit has also followed the rule that the 2 Restatement of Torts 2d, §402A version of assumption of the risk requires a showing of knowledge of the danger which is subjective, conscious and personal to the plaintiff. Jackson v. Coast Paint and Lacquer Company, (9th Cir. 1974), 499 F.2d 809.

By the foregoing, we do not intend to impose a burden upon the defendant which is virtually impossible to discharge. The defendant need not and, in the usual case, cannot prove the subjective requisites of the assumption of the risk defense by direct evidence. Seldom would a products liability plaintiff admit through his own testimony that he had knowledge of the danger and appreciated the risk involved. Therefore a defendant, in a given case, may effectively discharge his burden in this regard through proof of the subjective elements by circumstantial evidence. Sperling v. Hatch, 10 Cal.App.3d 54, 88 Cal.Rptr. 704 (1970).

Turning to the record in the instant case, it is manifest there is no evidence whatsoever plaintiff had subjective knowledge the excess door would open as it did, exposing the blades of the transfer auger. It further appears, and the jury could well have found, that plaintiff did not realize the risk associated with the product relative to his use of it at the time of the accident.

Defendant maintains that plaintiff, a knowledgeable and experienced farmer/rancher, assumed the risk of injury by knowingly and voluntarily climbing onto the machine while leaving the power-take-off system in operation. While plaintiff's act of climbing upon the Grain-O-Vator to inspect the bin was obviously voluntary, these questions remain: (1) Was it unreasonable for plaintiff to act as he did? (2) Was the danger actually known and appreciated by plaintiff?

Under the evidence, plaintiff may be guilty at most of failing to discover the defect or guard against its possible existence. While plaintiff's actions may have amounted to some contributory negligence, it cannot be said he assumed the risk

as a matter of law. The question is not whether plaintiff should have realized the risk, but whether in fact he did realize the risk involved. Defendant, in failing to establish plaintiff's actual knowledge and appreciation of the danger, did not discharge its affirmative burden of proof of the defense.

The evidence, to the contrary, sufficiently supports the conclusion that plaintiff's injury was a direct result of the defective design, failure to warn, and failure to provide safe access to the bin. Plaintiff satisfied the burden, under the standard of proof outlined in Brandenburger, of showing the defect was the proximate cause of his injuries.

Issue 5. The trial court gave as Court's Instruction No. 10 an instruction on the defense of assumption of the risk:

> "You are instructed that assumption of risk is voluntarily placing oneself in a position to chance known hazards. If a person has assumed the risk, he cannot recover for any injury or damage sustained by him. In determining whether or not the plaintiff assumed a risk, you are not to consider whether or not the plaintiff exercised due care for his own safety, but must find the following factors existed:

> "1. That he had knowledge, actual or implied, of the particular condition.

> "2. That he appreciated the condition as dangerous.

> "3. Voluntarily remaining or continuing in the face of the known dangerous condition.

> "4. Injury resulting as the usual or probable consequence of this dangerous condition.

> "If you find all four of the above factors did exist at the time of the plaintiff's injury, he cannot recover."

This instruction is drawn primarily from the Montana Jury Instruction Guide (MJIG). However here the MJIG approved instruction was modified by inclusion of the language, "you are

not to consider whether or not the plaintiff exercised due care for his own safety". Defendant contends the instruction as modified is an incorrect statement of the law, confusing and misleading to the jury and therefore it was error to give it. Defendant urges its proposed instruction No. 7, taken from the 1975 Revision of the California Jury Instructions (Civil), was a correct statement of the law of assumption of the risk, and should have been given.

The scope of our review in this case is well defined. This Court held in numerous cases, including Fox v. Fifth West, Inc., (1969), 153 Mont. 95, 101, 454 P.2d 612, that:

> "* * * instructions must be considered in their entirety, and to determine whether instructions were properly given or refused this Court will read them in connection with other instructions given and consider them in the light of the evidence introduced."
> 153 Mont. 101.

Similarly, an error in any instruction considered in isolation may be cured by reviewing the charge as a whole. Northern Pac. R. Co. v. Lynch, 79 F. 268, 173 U.S. 701, 19 S.Ct. 878, 43 L.Ed. 1185 (1899).

A review of the instruction finds it improperly inserts into the case elements of contributory negligence that could cause jury confusion. Therefore in the interests of clarification, we disapprove of its use in future cases.

As previously noted herein, in an instruction on assumption of risk, the subjective standard will be used and the words "actual" or "implied" will not be used. See: Prosser, Law of Torts, 4th ed., §68 Assumption of Risk, pp. 445-452.

The giving of Instruction No. 10 as to this defendant does not constitute reversible. error. Defendant's burden of

proof was clearly reduced due to the deficiency of the instruction. Under the given instruction, defendant could have argued plaintiff had implied knowledge, creating a measure for plaintiff's behavior based upon the standard of the "reasonable man" as an alternative to a showing of actual, subjective knowledge. Such a standard is inconsistent with the defense of assumption of the risk in the context of strict liability theory, as previously noted. If anything, the error as discussed enured to the benefit of defendant in this case.

An error in an instruction which is favorable to the objecting party is harmless error. Harding v. H. F. Johnson, Inc., (1952), 126 Mont. 70, 244 P.2d 111; Broberg v. Northern Pac. Ry. Co., (1947), 120 Mont. 280, 182 P.2d 851. The trial court's refusal to give defendant's proposed instruction on assumption of the risk was not prejudicial error, as defendant was not thereby deprived of the potential defense. Wollan v. Lord, (1963), 142 Mont. 498, 385 P.2d 102. In fact, defendant was able under the given instruction to introduce evidence and argue the defense under a burden significantly reduced in comparison to the standard established above.

Any error resulting from inclusion of the phrase concerning "due care" is also harmless, in view of the evidence negating the defense of assumption of the risk altogether, and the charges taken as a whole. Fox v. Fifth West, Inc., supra. Defendant has demonstrated no real prejudice in this regard.

Issue 6. Defendant also alleges as error the trial court's refusal of its proposed instruction No. 5 concerning the elements of proof in a strict liability action.

Defendant's proposed instruction, in essence, sets forth the elements of proof required by Brandenburger. However, the

proposed instruction includes the following additional elements as matters which must be affirmatively established by plaintiff:

> "First: The defendant placed the Grain-O-Vator in question on the market for use, and the defendant knew, or in the exercise of reasonable care should have known, that the particular Grain-O-Vator would be used without inspection for defects in the particular part, mechanism or design which is claimed to have been defective.

> " * * *

> "Third: The plaintiff was unaware of the claimed defect."

Defendant admits the "inspection for defects" matter is not an element of the law of strict liability as set forth in 2 Restatement of Torts 2d, §402A. The rule has its origin in the landmark products liability case Greenman v. Yuba Power Products, Inc., (1962), 27 Cal.Rptr. 697, 377 P.2d 897, and is generally limited in application to subsequent California cases.

We conceive of no policy which would justify imposing an increased burden of proof upon a products liability plaintiff. The manufacturer is sufficiently insulated from absolute liability by a plaintiff's required adherence to the burden of proof heretofore outlined in this opinion. No error could result from refusal to instruct as to an element of proof not imposed by the governing law.

Further, plaintiff's lack of awareness of a defect cannot be considered an element plaintiff must affirmatively establish. Rather, plaintiff's awareness of the defect is a matter going to the affirmative defense of assumption of the risk. As such, the burden of alleging and proving "awareness" is upon the defendant. The trial court cannot be placed in

- 19 -

error for instructing as it did regarding the essential elements of strict liability.

Issue 7. Finally, defendant advances error in the trial court's admission, over objection, of plaintiff's offered movie exhibit.

The movie, offered as demonstrative evidence intended to illustrate plaintiff's testimony, depicts plaintiff's son mounting the Grain-O-Vator involved in the accident and taking the precise steps plaintiff asserts he took at the time of the accident. For purposes of illustration, the springs were removed from the excess door. As plaintiff's son stepped down towards the excess door, it was pulled open by way of a thin line. Defendant contends that the circumstances of the demonstration differed radically from those at the time of the accident, causing it to appear to the jury as if the excess door would suddenly snap and remain open.

However, defendant ignores the fact the jury was cautioned the film was intended as demonstrative evidence only, and was instructed in detail as to the changes in conditions between the actual occurrence and the demonstration. The exhibit was offered after a reading of the following statement to the jury:

> "This movie is intended to illustrate how the plaintiff, Deane Brown, thinks this accident happened. The machine had no feed in it when the movie was taken. At the time of the accident, the lid over the auger had springs attached to it and they are not on the machine in the movie. The lid over the auger is hinged like it was at the time of the accident, that is, the lid was hinged at the bottom and swung open from the top as shown in the movie. During the movie, the lid is pulled open with fish line to demonstrate how it could move from its point of pivot. This of course is not intended to show you what caused it to open at the time of the accident, nor is the jury to use the film in any way in deciding what caused the lid to open at the time of the accident. Again, the purpose of the movie is only to illustrate how the plaintiff believes the accident happened."

The movie was admitted through plaintiff's own testimony, with counsel establishing additional foundation elements of identification and accuracy.

Generally, allowing demonstrative evidence is within the discretion of the trial judge, and is subject to review only upon a showing of a manifest abuse of discretion. Gunderson v. Brewster, (1970), 154 Mont. 405, 466 P.2d 589. Particularly as regards movies of reconstructions, it has been held that such movies are admissible if shown to be accurate and relevant, and any change in conditions is adequately explained. Greenich v. Southern Pacific Company, 189 Cal.App.2d 100, 11 Cal.Rptr. 235 (1961), 29 Am Jur 2d Evidence, §801.

The trial court is imbued with wide discretion in admitting any diagram, map or photograph. Recently this Court in State v. Sharbono, (1977), ____Mont.____, 563 P.2d 61, 34 St.Rep. 196, considered a similar objection to the use of a "burn film" offered by the defense. Issue was taken to the trial court's refusal to allow the showing of the film, and the trial court's ruling was upheld by this Court citing Gobel v. Rinio, (1948), 122 Mont. 235, 200 P.2d 700, and Leary v. Kelly Pipe Co., (1976), ____Mont.____, 549 P.2d 813, 33 St.Rep. 413.

We conclude the judgment of the District Court entered upon the verdict of the jury was correct, and it is affirmed.

_____
Justice.

We Concur:

_Gene B Daly_

_____

_____
Justices.

. . . . . . . . . .

Mr. Justice Frank I. Haswell, specially concurring:

I concur in the result but not in all that is said in the foregoing opinion.

My principal disagreement concerns the discussion of Issue 5 relating to the defense of assumption of risk. As pointed out in the majority opinion contributory negligence is not a defense to a products liability case, but assumption of risk is a complete bar to recovery in such a case. The court's Instruction No. 10 read:

> "You are instructed that assumption of risk is voluntarily placing oneself in a position to chance known hazards. If a person has assumed the risk, he cannot recover for any injury or damage sustained by him. In determining whether or not the plaintiff assumed a risk, you are not to consider whether or not the plaintiff exercised due care for his own safety, but must find the following factors existed:
>
> "1. That he had knowledge, actual or implied, of the particular condition.
>
> "2. That he appreciated the condition as dangerous.
>
> "3. Voluntarily remaining or continuing in the face of the known dangerous condition.

"4. Injury resulting as the usual or probable consequence of this dangerous condition.

"If you find all four of the above factors did exist at the time of the plaintiff's injury, he cannot recover."

In my view this instruction is a correct statement of the law. The instruction is the standard MJIG instruction used in the trial courts of this state for many years excepting that the phrase "you are not to consider whether or not the plaintiff exercised due care for his own safety" has been added. This addition conforms to existing law and makes clear to the jury that it is not to judge plaintiff's conduct by contributory negligence standards.

As the United States District Court observed in Deeds v. United States, (D.Montana 1969), 306 F.Supp. 348, 362:

"* * * Contributory negligence arises from a lack of due care. Assumption of risk will bar recovery regardless of the fact that plaintiff may have acted with due care."

I have no objection to striking the words "actual or implied" from the instruction in the future in the interest of clarity. It may be that jurors are confusing "implied" knowledge with "constructive" knowledge which will not support the defense of assumption of risk.

There is also other language in the discussion of Issue No.4 that improperly injects contributory negligence into the case, e.g., "(1) Was it unreasonable for plaintiff to act as he did?"

_Frank I. Haswell_
Justice.

- 23 -

Mr. Justice Daniel J. Shea specially concurring:

I agree with the result reached by the majority and with most of its conclusions. However, scattered throughout the opinion there is loose language that could cause some confusion. I will confine my remarks to that which I believe might cause future confusion.

Language in several places implies the plaintiff must prove both that the product was "defective" and "unreasonably dangerous". It is virtually impossible to define "defective" in the context of the various kinds of products liability cases. Moreover, a careful reading of 2 Restatement of Torts 2d, §402 A and the comments thereto, leads me to believe that they are not separate elements. The thrust of the doctrine of strict liability is stated in Comment g. which provides in pertinent part:

> "The rule [of strict liability] stated in this
> Section applies only where a product is, at the
> time it leaves the seller's hands, in a condition
> not contemplated by the ultimate consumer <u>which
> will be unreasonably dangerous to him.</u>" (Emphasis
> added.)

Comment j. provides in pertinent part:

> "<u>In order to prevent the product from being
> unreasonably dangerous</u>, the seller may be re-
> quired to give directions or warning, on the
> container, as to its use." (Emphasis added).

I emphasize the above language because I believe that depending on the nature of the products liability claim, it may be confusing to the jury to speak both of "defective" products and "unreasonably dangerous" products. The basic thrust of § 402 A, 2 Restatement of Torts 2d, can be maintained by concentrating on the "unreasonably dangerous" condition of the product.

I concur with this Court's opinion stating that recovery is allowed where the condition complained of is open and obvious as well as latent. However, because of the confining language of the Restatement, care must be taken in instructing the jury. A close reading of 2 Restatement of Torts 2d, § 402 A and the comments thereto, reveals only silence as to whether an open and obvious condition can give rise to a strict liability claim. The definition of "unreasonably dangerous" contained in Comment i. of § 402 A, is made in the context of situations where the condition complained of is latent; it states:

> "i. <u>Unreasonably dangerous.</u> * * * The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. * * *"

In the present case the danger was latent, and the instruction may have been appropriate. However, it would not be appropriate in a situation where the danger was one that was open and obvious. I believe the above instruction given in a situation where the danger is open and obvious, would be tantamount to telling the jury to return a verdict for the defendant, thereby effectively precluding any realistic hope of recovery. Accordingly, in such situations, the trial courts should adopt a different instruction.

I agree with the overall position taken by the Court on the question of assumption of risk. However, concerning the Instruction questioned by the defendant, I feel that in most cases it is best to refrain from giving negative instructions to the jury. The inserted language concerning contributory negligence was negative in character, i.e., telling the jury what did not have to be proved. In most cases, I believe, it is sufficient to set out what each party must prove to sustain its

burden of proof, and to refrain from telling the jury what each party does not have to prove. In any event, I fail to see in what way the defendant was prejudiced because the statement of law was accurate.

There is language in the opinion that implies the subjective test of assumption of risk is being confined to strict liability cases only. The opinion states:

> "Henceforth, in product liability cases the defense of assumption of risk will be based on a subjective standard rather than that of the reasonable man test."

It has been my understanding that, at least since D'Hoodge v. McCann,(1968), 151 Mont. 353, 363, 443 P.2d 747, we have applied the subjective test to assumption of risk. There, we held assumption of risk "is governed by the subjective standard of the plaintiff himself rather than the objective standard of the reasonable man * * *."

The problem was not with the test we adopted, but with the Instruction given to the jury which allowed it to find that plaintiff could have the knowledge required by assumption of risk, if the knowledge was either actual or implied. The word "implied" does ring of constructive knowledge as noted by Justice Haswell in his concurring opinion, and I agree it should be deleted. However, these words should be eliminated from all instructions where assumption of risk is asserted as a defense, and not solely in strict liability cases.

A defendant is not bound by the plaintiff's testimony simply because the words "or implied" are eliminated from the definition of assumption of risk. Even though a plaintiff testifies he was not aware of the particular condition involved or did not appreciate the danger, circumstantial knowledge may show the plaintiff had

the actual (subjective) knowledge. If the facts are such that would lead a jury to believe that the plaintiff did not tell the truth, the jury is free to reject the plaintiff's testimony simply by applying the standard instructions on credibility of witnesses and weighing the evidence. It is one thing to argue the jury should disbelieve the plaintiff where he testifies that he did not have knowledge of the particular condition; it is yet another to argue that a reasonable man should have known of the particular condition involved. The knowledge that a man "should have had" has no place in the doctrine of assumption of risk where the cornerstone of the doctrine is plaintiff's consent. To allow it comes dangerously close to permitting a defendant to argue contributory negligence under the guise of assumption of risk.

I also do not agree with the statement in the majority opinion that "seldom would a products liability plaintiff admit through his own testimony that he had knowledge of the danger and appreciated the risk involved." Certainly the human nature of plaintiffs in general has not been shown to be so dishonest that it is customary for them to lie in support of their claims. Furthermore, even if a plaintiff admitted he had knowledge of the danger and appreciated the risk involved, it still would not defeat his claim. We have adopted the definition of assumption of risk as contained in 2 Restatement of Torts 2d, § 402 A, Comment n. which provides in pertinent part:

> "* * * If the user or consumer discovers the defect and is aware of the danger, and <u>nevertheless proceeds unreasonably to make use of the product and is injured by it</u>, he is barred from recovery." (Emphasis added.)

Accordingly, recovery would still be allowed if the plaintiff did not proceed unreasonably to make use of the product.

<u>Daniel J. Shea</u>
Justice.