No. 13413

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

PHILIP STENBERG,

               Plaintiff and Appellant,

  -vs-

BEATRICE FOODS, COMPANY,
a corporation,

               Defendant and Respondent.

---

Appeal from:  District Court of the Eleventh Judicial
           District,
           Honorable Robert Keller, Judge presiding.

Counsel of Record:

    For Appellant:

        Hash, Jellison and O'Brien, Kalispell, Montana
        Kenneth E. O'Brien argued, Kalispell, Montana

    For Respondent:

        Garlington, Lohn and Robinson, Missoula, Montana
        Gary L. Graham argued and Candace C. Fetscher argued,
        Missoula, Montana

---

               Submitted:  January 19, 1977

               Decided:  **MAR 1 5 1978**

Filed: **MAR 1 5 1978**

*Thomas J. Kearney*
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Plaintiff appeals from a judgment entered in the District Court, Flathead County, favoring defendant Beatrice Foods Co. in a products liability case. Plaintiff Philip Stenberg's left arm was amputated below the elbow when his arm slipped into the intake end of a grain auger (a mechanical, screw-type grain elevator) manufactured by the defendant Beatrice Foods Co. The action was tried on two theories: (1) that defendant was negligent in not designing a shield for the intake end of the grain auger, and (2) that defendant was liable under the doctrine of strict liability in tort for its failure to place a shield on the intake end of the grain auger.

At the close of plaintiff's case the trial court took the case away from the jury on the design negligence theory on the ground plaintiff was guilty of contributory negligence as a matter of law. Thereafter, the jury returned a verdict for defendant on the strict liability issue. Plaintiff appeals from the trial court's ruling and from the judgment in favor of defendant.

Plaintiff presents many issues for review, but because we reverse and grant a new trial we discuss only those issues that are determinative of our ordering a new trial and those which may be helpful on retrial. We will discuss the following issues:

(1) Whether the trial court erred in granting a nonsuit on the negligence count of plaintiff's complaint on the basis that plaintiff was contributorily negligent as a matter of law. In this regard, plaintiff also alleges it was improper for the District Court to instruct the jury

that he had taken the case away from it because he had found plaintiff to be contributorily negligent as a matter of law.

(2) Whether the jury must be instructed in the literal terminology of the Restatement of Torts 2d, §402A, that recovery for strict liability is allowed only where the product is in a "defective condition unreasonably dangerous to the user or consumer." In this context we also discuss whether the term "defective condition" must be defined for the jury, whether the two definitions of "unreasonably dangerous" as given to the jury were inconsistent, and whether the Restatement definition of "unreasonably dangerous" should properly be given where the condition complained of is one that is open and obvious as opposed to one that is hidden or latent.

(3) Whether the jury was properly instructed on assumption of risk and whether such an instruction was justified under the facts.

Plaintiff Stenberg worked as a grain truck driver for Grosswiler Dairy, Inc. from the fall of 1971 until August 31, 1972, the day of the injury. In the course of his work he observed the procedures followed in unloading grain trucks into the grain auger and he had done it himself a few times. Normally, however, he did not unload his own truck. When he did unload a grain truck, he followed the procedures he had observed. His employer had never instructed him in the proper method of unloading the grain.

Grosswiler Dairy used the auger to elevate the grain into a bin. The unshielded intake end of the auger was placed in a homemade box and grain was dumped from the trucks into the box. The box was approximately four feet square and a foot and a half high. Plaintiff was aware the auger was dangerous. He also knew that his employer owned a newer auger with a shield over the intake end.

On August 31, 1972, plaintiff was unloading his truck at the grain auger. He was out of the truck, had placed his left hand on the tailgate of the truck, and was in the process of removing a 2 x 4 board from the tailgate with his right hand. In order to grasp the handle on the tailgate plaintiff had to reach forward approximately two feet and leaned over the box in doing so. While removing the board the tailgate suddenly slammed shut, he lost his balance and fell forward into the moving grain auger. His left arm was severed below the elbow. The intake end of the auger was not equipped with a shield, nor was it designed to be equipped with a shield.

Stenberg first contends that the jury should have been allowed to determine whether or not he was contributorily negligent.

The test, of course, of plaintiff's contributory negligence is whether he acted as an ordinarily prudent man. Even where the facts are not disputed, the question is one for the jury if reasonable minds might draw different conclusions from the evidence. Dahlin v. Rice Trusk Lines, (1960), 137 Mont. 430, 352 P.2d 801; Stahl v. Farmers Union Company, (1965), 145 Mont. 106, 399 P.2d 763. In ruling on defendant's motion for a directed verdict, the court relied entirely on the testimony of the plaintiff and we conclude that reasonable minds could differ as to whether he was guilty of contributory negligence.

- 4 -

Plaintiff testified he was never instructed as to how a truck should be unloaded, and on the few occasions he did unload his own truck he followed the same procedures he observed others follow. There was no evidence in the record as to any other standard of use. In taking the case away from the jury the trial court concluded that he was doing so because plaintiff should have hung on to the tailgate, and thus would not have slipped and lost his balance. The trial court stated:

> "* * * This is clearly from the Plaintiff's
> standpoint, he was negligent and he knew the
> danger was there and there is no question every-
> body standing next to something like that
> appreciates, if you are going to get into it,
> you are in trouble. And he didn't hang on. He
> was negligent. * * *" (Emphasis added.)

While the trial court concluded that plaintiff had a duty to "hang on", and was negligent in not doing so, we cannot say as a matter of law that the reasonable minds of jurors would make that same determination. Clearly, the question was one for the jury.

On a related issue plaintiff complains when the court took the case away from the jury that at the defendant's request the court told the jury he had taken the issue of design negligence from it, because he had found plaintiff to be guilty of contributory negligence as a matter of law. Plaintiff complains this prejudiced his case on the remaining issue of strict liability.

In situations such as this, the trial courts must be careful to not give the wrong impression to the jury. Here, since the court ruled as a matter of law that plaintiff was guilty of contributory negligence, and so informed the jury, the jury could well conclude the court did not think much of the plaintiff's entire case. This could affect the remainder of the trial, as

the jury could get the impression, however subtle, or however un-justified, that the court leaned in defendant's favor. This is particularly true where the case is a close one or where a ruling on one issue may well give the jury a feeling as to how the court felt about the plaintiff's conduct. The distinctions between contributory negligence and assumption of risk have never been that clear to the courts and the legal profession, let alone a lay jury.

While a jury need not be kept in the dark that the trial court has taken a cause of action away from it, nevertheless, the trial judge must be extremely careful as to what he tells the jury. Here, the judge could have told the jury that as a result of a ruling he had made on a question of law, the only remaining issue it was concerned with was that of the plaintiff's claim of strict liability. He also could have informed the jury that it was not to be concerned why the court made this ruling. See, for example, McBride, The Art of Instructing the Jury, (1969), Sec. 4.12, page 141. After the jury returned with its verdict the court could then have explained its ruling to it.

The remaining two issues relate to the plaintiff's claim that the jury was not properly instructed on the questions relating to its products liability claim. Montana has adopted the rule of strict liability as set out in the Restatement of Torts. Brandenberger v. Toyota Motor Sales, U.S.A., Inc., (1973), 162 Mont. 506, 513 P.2d 268. Most of the claimed errors relate directly to an interpretation of the rule of strict liability set out in 2 Restatement of Torts 2d, §402A, which provides:

"(1) One who sells any product in a defective
condition unreasonably dangerous to the user or
consumer or to his property is subject to lia-
bility for physical harm thereby caused to the
ultimate user or consumer, or to his property, if:

"(a) the seller is engaged in the business of
selling such a product, and

"(b) it is expected and does reach the user
or consumer without substantial change in the
condition in which it is sold.

"(2) The rule stated in Subsection (1) applies
although

"(a) the seller has exercised all possible
care in the preparation and sale of his product,
and

"(b) the user or consumer has not bought
the product from or entered into any contractual
relation with the seller." (Emphasis added.)

We emphasize that this Court adopted the rule as set
out in the Restatement, but we did not and do not intend the
restraints in the comments to this rule to hamstring us in
developing and defining the rule of strict liability. To the
extent that the comments are helpful in our development of the
law, we shall accept them; but we will reject them where we
believe a more appropriate explanation of the rule of strict
liability can be provided.

The plaintiff raises three issues concerning the key
terminology for recovery under the Restatement in strict lia-
bility, namely, that for recovery the product must be in a
"defective condition unreasonably dangerous." (Emphasis added.)

(a) He contends the court failed to define the
term "defective condition".

(b) He contends that in adopting two definitions
of "unreasonably dangerous" the court adopted inconsis-
tent definitions.

- 7 -

(c) He contends that one of the definitions of "unreasonably dangerous" as taken from a definition in the Restatement, effectively precluded recovery under any situation where the condition complained of is open and obvious rather than one which is hidden or latent.

These issues are interconnected by the terminology of the Restatement itself.

The issue as to "defective condition" arose when plaintiff offered two instructions defining "defective condition" which the trial court rejected. The defense offered no instructions defining this term, and the court did not give any of its own. The result was that the jury was without guidance as to the meaning of "defective condition". Plaintiff contended at trial and asserts here that only "defective condition" should be defined, and that the words "unreasonably dangerous" should be eliminated from the proof required of a plaintiff. He relies on Cronin v. J.B.E. Olson Corp., (1972), 104 Cal.Rptr. 433, 501 P.2d 1153, which held that a plaintiff need only prove in a strict liability case that the product was "defective". Cronin expressly eliminated the requirement that a plaintiff prove the product was "unreasonably dangerous". The basis of the decision was that the term "unreasonably dangerous" rings of negligence concepts and the policy of strict liability is to avoid this. However, we reject plaintiff's position that Montana should also eliminate the requirement of "unreasonably dangerous".

The issue of defining "unreasonably dangerous" arose in the context of Instruction No. 10 defining "unreasonably dangerous". It gave the jury two definitions of "unreasonably dangerous". It was agreed by the parties that the condition complained of (unshielded intake end of a grain auger) was open and obvious.

- 8 -

Instruction No. 10 reads:

> "The term 'unreasonably dangerous' as used else-
> where in these instructions pertaining to the
> doctrine of strict liability has a particular
> meaning applicable to this legal doctrine. For
> liability to be imposed under this doctrine, you
> must find that the product was unreasonably
> dangerous, by which is meant dangerous to an ex-
> tent beyond that which would be contemplated by
> the ordinary consumer who purchased it, with the
> ordinary knowledge common to the community as
> to the product's characteristics.
>
> "Another test of 'unreasonably dangerous' is
> assuming that the defendant had knowledge of the
> condition of the product, would the defendant
> then have been acting unreasonably in placing it
> on the market?"

The definition contained in the first paragraph of

Instruction No. 10 is obviously inconsistent with the definition

contained in the second paragraph. The first views "unreasonably

dangerous" from what the consumer could see at the time of

purchase or use. The second views "unreasonably dangerous"

from what the manufacturer knew or should have known at the

time of manufacture. By these definitions a jury could conclude

under the first test that the unshielded auger was not "unreason-

ably dangerous" but under the second test that it was "unreasonably

dangerous". What then was the jury to do? This instruction

could only have confused the jury as to what is meant by the

term "unreasonably dangerous", and it was improper. This also

is sufficient reason for reversal.

The third issue concerning the definition of "unreasonably

dangerous" is connected with the Restatement definition of this

term. Plaintiff contends the practical effect of this definition

is to provide a jury with a built-in reason to conclude that an

open and obvious condition is not "unreasonably dangerous".

He argues that it effectively confines possible recovery to a

condition which may be latent or hidden. One of the instructions defining "unreasonably dangerous" supra, was taken from Comment i., 2 Restatement of Torts 2d, §402A, which states:

"* * * The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. * * *"

We believe this instruction may be adequate in situations where the condition complained of is latent, but it should not be given where the condition complained of is open and obvious.

Most of §402A, 2 Restatement of Torts 2d, discusses strict liability in situations involving food, medicine, drugs and other situations where the danger is not an open and obvious one. Comment i. to §402A does not cite any example where that danger may be one that is open and obvious. However, this Court recently held there is no legitimate reason to refuse recovery in a situation where the condition is open and obvious. Brown v. North American Manufacturing Co., (1978), _____Mont._____, _____P.2d _____, 35 St. Rep. 194.

The problem with using the Restatement definition of "unreasonably dangerous" is well illustrated by what happened in this case. Defendant manufacturer consistently maintained it was not liable as a matter of law because the unshielded intake end of the grain auger could be seen by an ordinary consumer or user of the product, and therefore the danger could be contemplated. Plaintiff did not dispute that he saw the unshielded intake end of the grain auger, and he also recognized it as being dangerous. Surely, if he could see the danger, he could contemplate the danger. Under the court's instruction therefore, it was a simple matter for the jury to conclude that the unshielded

- 10 -

intake end of the grain auger was not unreasonably dangerous, because plaintiff saw it and could contemplate what he had seen. At the close of all evidence defendant moved for a directed verdict precisely on those grounds, stating:

> "[Defendant] * * * moves the Court for a directed verdict or en try of judgment in favor of the Defendant on the grounds and for the reasons that the elements of strict liability were not proved, particularly with regard to the unreasonably dangerous and defective condition which is required under the strict liability law in Montana. The determination of unreasonably dangerous, it is felt that the Montana law with respect to that involves a determination of whether the user contemplates a danger. In this case all of the evidence has been that the danger is open and obvious and the Plaintiff himself has testified that he has appreciated the danger."

Although the trial court denied this motion, defendant, later armed with an instruction which stated in effect that an open and obvious danger is not "unreasonably dangerous" if it can be contemplated by the user, was able to make a more convincing argument to the jury. Under this type of instruction it would be virtually impossible for an open and obvious condi- to be unreasonably dangerous. For all practical purposes recovery would be limited to latent conditions. As stated in Brown v. North American Manufacturing Co., supra, there are no policy reasons to refuse recovery if the condition is one that is open and obvious.

In the last issue concerning jury instructions, plaintiff attacks the assumption of risk instruction given in this case. Plaintiff offered no instructions on this doctrine because he contended the doctrine did not apply to the facts of this case. Furthermore, even when defendant did offer such an instruction, which was the standard Montana Jury Instruction No. 13.00, plaintiff made no specific objection to it. Moreover, in Brown

- 11 -

we recently discussed in detail the doctrine of assumption of risk as it applies to strict liability, and the decision there is a sufficient guide for the retrial of this cause.

Plaintiff also contends the evidence was insufficient for the doctrine of assumption of risk to apply. In this regard we note the jury in the instant case was not properly instructed on either of plaintiff's theories of liability, and the entire cause must be tried again, under proper instructions. Under these circumstances, we do not think the defendant should be precluded from presenting its evidence on the defense of assumption of risk. The trial court can then make a determination of whether there is sufficient evidence of assumption of risk to present it to a jury.

We reverse the judgment of the District Court. This cause is remanded for retrial with directions to proceed in accord with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices.

- 12 -

Mr. Justice Daniel J. Shea's Special Concurring Comment to Opinion:

While we concluded herein that if the term "defective condition" is given to the jury it must somehow be defined, I believe that it is not necessary to present the issues to the jury in the precise terminology of the Restatement -- "defective condition unreasonably dangerous."

The above wording has, I am certain, caused many problems of interpretation and undoubtedly has been the source of much confusion in the minds of jurors. Because it is confusing and nondefinable, the term should not be given to the jury unless it is absolutely essential to the meaning of strict liability. I believe that it is not so essential, and accordingly, the term "defective condition" can be effectively eliminated without taking any of the meaning away from the basic thrust of strict liability. That basic thrust is to protect the public, or give them redress against manufacturers whose products for some reason are rendered unreasonably dangerous.

The change in the law by the adoption of strict liability and the failure to define "defective condition" or "defect" was discussed by Professor Keeton in 5 St. Mary's Law Journal, 30,33 (1973):

> "The change in the substantive law as regards
> the liability of makers of products and other
> sellers in the marketing chain has been from
> fault to defect. The plaintiff is no longer
> required to impugn the maker, but he is required
> to impugn the product. Simply stated, the product
> must be defective as marketed, and it may be de-
> fective as marketed for one or the other of at
> least three reasons: (1) It may have been fabri-
> cated or constructed defectively in the sense that
> the specific product was not at the time of sale
> by the maker or other seller in the condition that
> the maker intended it to be; or (2) it may have

been improperly designed; and (3) purchasers and those who are likely to use the product may have been misinformed or inadequately informed, either about the risks and the dangers involved in the use of the product or how to avoid or minimize the harmful consequences from such risks. <u>In so stating, it must be obvious that while different categories of defects are recognized, there has been no resolution of the ultimate question as to the meaning of defect.</u>" (Emphasis added.)

The first question for determination is whether the plaintiff is required to prove that the product was "defective" and also that it was "unreasonably dangerous". If both are required then clearly the jury must understand the meaning of "defect" or "defective". Otherwise a jury would be left without meaningful guidelines concerning the key language or core test of strict liability. It is axiomatic that where material elements of the law turn on key words or terms, those words or terms, as well as the elements, must be defined for the jury. First Nat. Bank of Portland v. Carroll, (1907), 35 Mont. 302, 314, 88 P. 1012 (holding that an instruction on damages which included the words "actual", "remote" and "speculative" should have been defined for the jury); Rand v. Butte Electric Ry. Co., (1910), 40 Mont. 398, 410, 411, 107 P. 87 (holding that "preponderance of the evidence" and "direct and proximate result" should have been defined for the jury). Likewise the term "defective condition" is a technical term, difficult to understand, particularly in the context of strict liability, and should be defined for the jury if the literal terminology of the Restatement "defective condition unreasonably dangerous" is to be given to the jury. In the instant case since the term "defective condition" was twice given to the jury, it should have been defined.

Analysis of the Restatement language leads me to conclude that the essential thrust of the Restatement's position on strict liability can be retained without the courts and juries having to wrestle with the meaning of "defective condition".  Concerning "defective condition unreasonably dangerous" Professor Keeton states in 5 St. Mary's Law Journal 30, 32, (1973):

> "* * * It is unfortunate perhaps that Section 402A of the Restatement (Second) of Torts, provides that as a basis for recovery, it must be found that the product was both 'defective' and 'unreasonably dangerous', when as a matter of fact <u>the term 'unreasonably dangerous' was meant only as a definition of defect.</u>  The phrase was not intended as setting forth two requirements but only one, the notion being that the product was not defective for the purpose of shifting losses due to physically harmful events unless it was 'unreasonably dangerous'. * * *" (Emphasis added.)

By this explanation there is only one requirement, rather than two, and I believe it to be the most reasonable approach. For a detailed discussion concluding that the term "unreasonably dangerous" is the core of strict liability under the Restatement, see also: Tobias & Rossbach, A Framework for Analysis of Products Liability in Montana, 38 Montana Law Review 221, 246-255 (1977).

Two comments to 2 Restatement 2d, §402A also lead me to believe the focal point is whether or not the condition complained of is "unreasonably dangerous".  Comment g. provides in relevant part:

"The rule [of strict liability] stated in this
Section applies only where the product is, at
the time it leaves the seller's hands, in a con-
dition not contemplated by the ultimate consumer,
which will be unreasonably dangerous to him."
(Emphasis added.)

Comment j. provides in pertinent part:

"In order to prevent the product from being
unreasonably dangerous, the seller may be
required to give directions or warning, on the
container, as to its use." (Emphasis added.)

Each of these comments centers around the ultimate finding that

the condition complained of must render the product unreasonably

dangerous. Otherwise, there is no liability.

Here, the District Court directly injected the term

"defective condition" into the ultimate resolution of the case

by stating it as part of the issues to be determined. Instruction

No. 27 stated:

"The issues to be determined by you in this action
are these:

"First, was the auger in a defective condition
unreasonably dangerous? If your answer to this
question is 'No', you will not consider the matter
further, but will return a verdict in favor of the
Defendant, and notify the bailiff, who will return
you into Court. If your answer to this question is
'Yes', you will have a second issue to determine,
namely: was the defective condition unreasonably
dangerous a proximate cause of any injury to the
Plaintiff? * * *" (Emphasis added.)

It was not necessary to state the issues in this fashion.

Without taking any meaning from the focal point of strict liability

under the Restatement, the jury could have been instructed on the

issues as follows:

First, did the unshielded intake end of the
grain auger render it unreasonably dangerous?
If your answer to this question is "yes", you
will have a second issue to determine, namely:
was the unshielded intake end of the grain auger
the proximate cause of any injury to the plaintiff?

- 16 -

The case was not complex in terms of the condition complained of which rendered the grain auger unreasonably dangerous. If there was more than one allegation of unreasonably dangerous condition, it would be a simple matter to convert the above instruction to one covering each of the allegations.

As stated earlier in quoting Professor Keeton, supra, the issue under strict liability is one of impugning the product rather than impugning the conduct of the manufacturer. Accordingly, the focal point is on the condition of the product as it entered the stream of commerce. The vital question is: Was it unreasonably dangerous? It is vitally important in this regard that the jury does not get bogged down in wrestling with the nondefinable and unnecessary terminology of "defective condition".

_Daniel J. Shea_
Justice.