No. 83-457

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

ORRIN STREICH, C. EDWIN WILLIAMSON,
and CLIFFORD BOORMAN,

Plaintiffs and Respondents,

-vs-

HILTON-DAVIS, a Division of
Sterling Drug, Inc., a corp.,

Defendant and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Boone, Karlberg & Haddon; Sam Haddon argued,
Missoula, Montana

For Respondents:

Garlington, Lohn & Robinson; Gary Graham argued,
Missoula, Montana

Submitted: April 19, 1984

Decided: December 13, 1984

Filed: DEC 13 1984

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Hilton-Davis appeals from a judgment entered in the District Court for the Eleventh Judicial District, Flathead County after a jury awarded Streich, Boorman, and Williamson a total of $781,119 in damages. Hilton-Davis, as manufacturer of a chemical product called Fusarex, was found liable for damages based on theories of strict liability in tort, negligence, and breach of warranties. We affirm the judgment and damage award.

Fusarex is manufactured and sold by Hilton-Davis as a potato sprout suppressant. The directions for use of Fusarex require dusting seed potatoes just before storage. The Fusarex is expected to keep the treated seed potatoes from sprouting until after they are taken from storage, aerated, and planted. The Fusarex bag label contained the following statement: "After planting there may be a slight delay in emergence depending on weather conditions and variety."

Streich is a commercial seed potato grower who used Fusarex prior to 1977 in his potato operations in North Dakota and then Montana. In the fall of 1977, he purchased Fusarex from a Hilton-Davis distributor and dusted a quantity of his newly-harvested seed potatoes with it. The seed potatoes were then stored for the winter. In the spring, after inspecting the potatoes and keeping some for himself, Streich sold substantial amounts of the certified seed to Williamson and Boorman.

In June 1978, Streich, Williamson and Boorman began noticing problems with their potato crops. The seed potatoes treated with Fusarex showed delayed and erratic emergence,

multiple sprouting, a heavy tuber set resulting in small potatoes, and reduced yield. A complaint was filed alleging strict liability in tort, negligence and breach of the implied warranties of merchantability and fitness. The jury returned a verdict finding Hilton-Davis liable on all three theories and granting damages to all three plaintiffs.

Hilton-Davis raises the following issues:

1. Was expert testimony necessary to establish the standard of care owed by Hilton-Davis to Streich, Williamson, and Boorman and to show that Hilton-Davis had breached that standard?

2. Was Hilton-Davis improperly denied adequate opportunity to cross-examine plaintiffs' expert witness?

3. Did the District Court improperly apply the doctrine of strict liability in tort to a commercial case, not involving personal injury, but involving harm to a potato crop?

4. Did the District Court err in allowing the question of whether the product Fusarex is "unreasonably dangerous" to go to the jury?

5. Did the District Court improperly instruct the jury on the theory of strict liability in tort and thus prejudice Hilton-Davis' right to a fair trial on all of plaintiffs' theories of recovery?

6. Did the District Court improperly submit the case to the jury on the theory of implied warranty?

7. Did the District Court improperly submit plaintiffs' case to the jury on the theory of negligence?

8. Did the District Court commit prejudicial error by refusing instructions which encompassed Hilton-Davis' theory of the case?

## Expert Testimony

Hilton-Davis contends that, under the plaintiffs' theory of product liability, the plaintiffs must establish by a preponderance of the evidence the failure of Hilton-Davis to warn of adverse side-effects of Fusarex. Hilton-Davis points out that the single expert called by the plaintiffs to establish their case made no declaration as to failure to warn in his testimony nor did that expert testify that the Fusarex was defective. Relying on Hill v. Squibb & Sons, E.R. (1979), 181 Mont. 199, 592 P.2d 1383, Hilton-Davis contends that without such professional opinion testimony that the product was defective and that adequate warnings were not given, plaintiffs did not present a prima facie case and the court should have granted Hilton-Davis' motion to dismiss at the close of the plaintiffs' case.

In Hill, this Court upheld a directed verdict at the close of plaintiffs' case, in favor of Squibb, where the plaintiffs had not produced expert testimony that the package insert included with the product inadequately warned of the product's side-effects. This Court held that expert opinion was necessary in the Hill case because it involved matters to which a layman could have no knowledge at all and the court and jury must be dependent on such expert evidence. (181 Mont. at 207, 592 P.2d at 1388.)

This Court did not intend, through its decision in Hill, to narrow or back away from its statements in Brandenburger v. Toyota Motor Sales (1973), 162 Mont. 506, 518, 513 P.2d 268, 275, respecting the quantum and method of proof in product liability cases:

> "The nature and quality of evidence used in products liability cases to show the defect and the nexus between the defect and the accident naturally

varies. The most convincing evidence is an expert's pinpointing the defect and giving his opinion on the precise cause of the accident after a thorough inspection. If an accident sufficiently destroys the product, or the crucial parts, then an expert's opinion on the probabilities that a defect caused the accident would be helpful. _If no such opinion is possible, as in the present case, the user's testimony on what happened is another method of proving that the product was defective._ If the user is unable to testify, as where the accident killed him or incapacitated him, no other witness was present at the time of the accident, and the product was destroyed, the fact of the accident and the probabilities are all that remain for the party seeking recovery. At this point _the plaintiff can attempt to negate the user as the cause and further negate other causes not attributable to the defendant._ These kinds of proof introduced alone or cumulatively are evidence which help establish the presence of a defect as the cause of the damage." (Emphasis added.)

The language in _Brandenburger_ applies to possible methods of proving defects in products, but it applies with equal force to the duty of a manufacturer to warn of adverse side-effects which may occur from the use of its product.

Here the only warning on the Fusarex bags was that after planting Fusarex might cause a slight delay in emergence, depending on weather conditions and variety. The warning itself was not sufficient to advise users that the emergence might be delayed and erratic, that multiple sprouting could result, that small potatoes could result from a heavy tuber set after the use of Fusarex, and that yield could be materially reduced.

The plaintiff's expert in this case produced scientific literature which gave results of field tests of the chemical in Fusarex on potatoes. The literature revealed a decided risk of multiple sprouting, delayed emergence, heavy tuber set, and reduced yield. The warning on the Fusarex bag that a slight delay in emergence might result hardly matched the possible adverse side-effects from its use. Any layman could

understand the insufficiency of the warning. Expert testimony was not necessary.

We are presented here with a unique products-liability case. Fusarex was touted by its manufacturer as a sprout suppressant for potatoes. It seems fairly established in the testimony here that Fusarex did what its manufacturer said it would, that is, suppress potato sprouting. The trouble here is, when the time came for the seed potatoes to be aired and planted, after their Fusarex treatment, side-effects occurred of which Fusarex failed to give warning. Under the evidence in this case the plaintiffs established a standard of duty, that is the duty to warn of adverse side-effects, and that the manufacturer of Fusarex breached that duty or standard.

The second issue raised by Hilton-Davis relates to the cross-examination of plaintiffs' expert by Hilton-Davis' counsel.

On cross-examination, plaintiffs' expert testified that the Fusarex product was manufactured according to the company's designs and specifications. The question was then propounded to him that "therefore it was not in a defective condition at that time in that sense?" The court sustained objection upon the ground that the question was outside the field of expertise of the expert who had not "been qualified as an expert in determining what's in a bag of Fusarex."

As we have stated, this case involved a product which performed its primary function, that is suppressing sprouting of potatoes, but had adverse side-effects for which no warning had been given. Plaintiffs' expert had testified as to the literature on side-effects and his observation of the occurrence of those side-effects. The court was correct in determining that the question propounded to him on

cross-examination by Hilton-Davis' counsel was outside his expertise. We find no merit in this claim of error.

## Strict Liability in Tort

Hilton-Davis contends that it was error for the District Court to submit the issue of strict liability in tort to the jury. It is the position of Hilton-Davis that strict liability in tort has no application in cases of lost profits in a purely commercial setting.

Montana adopted the theory of strict liability in tort contained in Restatement (Second) of Torts, § 402A. Brandenburger v. Toyota Motor Sales (1973), 162 Mont. 506, 513 P.2d 268. In Brown v. North American Mfg. Co. (1978), 176 Mont. 98, 105, 106, 576 P.2d 711, 716, we set forth the elements of proof necessary to establish a prima facie case in strict liability of tort.

Brandenburger and Brown both involved personal injury claims. However, the Restatement (Second) of Torts, § 402A does not limit the theory of strict liability to personal injury cases. It also includes cases involving damage to property. It provides:

> "(1)   One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property. . ."

Hilton-Davis contends that the policy reasons for the adoption of strict liability in tort by the courts do not apply in a case where the only damages are loss of commercial profits. Those policy reasons include spreading the cost of personal injury resulting from a defective product to all users of the product (see Brandenburger, supra), the superior bargaining position of the seller of the product, and the possible inadequacy of recoveries for damages under the

contractual concepts of express or implied warranty. Hilton-Davis points to cases, such as Moorman Manufacturing Company v. National Tank Company (1982), 91 Ill.2d 69, 435 N.E.2d 443, which disallow the application of strict liability in commercial loss cases, leaving the parties to their remedies under the Uniform Commercial Code. Hilton-Davis also suggests that in addition to the remedies under the UCC, commercial users who suffer losses from a product obtained in the stream of commerce are better left, to a reduction of their losses through deductions and provisions of the Internal Revenue Code for income tax or even the bankruptcy courts. Thus, says Hilton-Davis, Brandenburger can be justified because the physical injuries suffered there and the resulting costs therefrom, including damages for pain and suffering and loss of earning capacity, are not reducible under the Internal Revenue Code.

Streich, Williamson and Boorman respond on this issue that the damages were in fact physical injuries to property, in that the seed potatoes were damaged through the use of Fusarex. Therefore, say these respondents, their damages are within the mantle of protection assured by Restatement (Second) of Torts, § 402.

We held in Thompson v. Nebraska Mobile Homes Corporation (Mont. 1982), 647 P.2d 334, 39 St.Rep. 1094, that strict liability is not governed by the Uniform Commercial Code. When, as here, the use of a product for the purpose for which it was intended has the foreseeable potential of damaging the users property, the doctrine of strict liability applies. Here the Fusarex apparently performed its intended function, the suppression of sprouting in the potatoes while they were in storage. It was the side-effects of the Fusarex, after it

had performed its intended function, which resulted in damage to the consumers. No warning had been given by Hilton Davis of those possible side-effects. The failure of Hilton Davis to warn was a species of unsafe conduct on the part of the manufacturer. It is this kind of unsafe conduct that fits well within the concepts of the doctrine of strict liability.

Other courts agree. See Cloud v. Kit Mfg. Co. (Alaska 1977), 563 P.2d 248; Hales v. Green Colonial, Inc. (8th cir. 1974), 490 F.2d 1015; and Shields v. Morton Chemical Company (Idaho 1974), 518 P.2d 857, where the plaintiff was allowed recovery for damage to its seed beans and additional damages for loss of good will and anticipated profits when the seed beans failed to germinate properly after the plaintiff applied a pesticide-fungicide to the seed beans.

Our decision in Whitaker v. Farmhand, Inc. (1977), 173 Mont. 345, 567 P.2d 916, is not in point, although Hilton-Davis contends it is. In Whitaker, we found that consideration of strict liability was not reversible error in the light of the facts of that case but that more precise bases of liability were found in negligence and the law of warranty.

We find no error in the application of the District Court of the theory of strict liability to this case.

Hilton-Davis next claims that Fusarex cannot be considered "unreasonably dangerous," under the Restatement concept of strict liability because Fusarex presented no danger to human life or safety. In support, it relies on a line of cases, including Brown v. Western Farmers Association (1974), 268 Or. 470, 521 P.2d 537. In that case, in which it appeared that chicken feed caused lost profits to an egg producer, the Oregon court determined that such chicken feed

could not be considered unreasonably dangerous. The Court stated it would not "water down" the "unreasonably" dangerous requirement of § 402(a) of the Restatement so as to extend the doctrine of strict liability to any defect which in any way might decrease the value of property. 521 P.2d at 542.

The other end of the spectrum with respect to the Restatement clause "unreasonably dangerous" is found in Cronin v. J. B. E. Olson Corporation (Cal. 1972), 501 P.2d 1153. Cronin expressly eliminated the requirement that a plaintiff prove that the product was "unreasonably dangerous." The Montana court refused to follow the lead of Cronin in Stenberg v. Beatrice Food Company (1978), 176 Mont. 123, 129, 130, 576 P.2d 725, 729.

Stenberg involved a worker who was unloading his truck at a grain auger. He accidentally fell into the intake end of the auger which was not equipped with a shield. His left arm was severed. We determined in Stenberg that even though the intake end of the auger was unshielded, and the lack of shield was obvious to anyone looking at it, the doctrine of strict liability in tort was not confined to products having latent conditions of danger. In his specially concurring opinion, Justice Shea pointed to authority which stated that a product may be defective as marketed for one or more of at least three reasons: (1) it may have been fabricated or constructed defectively in the sense that the specific product was not in the condition that the maker intended it to be at the time of sale by the maker or other seller; (2) it may have been improperly designed; and (3) purchasers and those who are likely to use the product may have been misinformed or inadequately informed, either about the risks or about the dangers involved in the use of the product or

- 10 -

how to avoid or minimize the harmful consequences from such risk. 576 P.2d at 731.

In this case, the defect involved relates to the purchaser and user being misinformed or inadequately informed about the risk of danger to the user's property from the product.

We hold that where the "defect" involves an inadequate warning, so that the unguided user exposes himself or his property to risk or danger in using the product, the test of Restatement (Second) of Torts, § 402(a) is met--the product is "in a defective condition unreasonably dangerous" to the user or to his property.

The next contention of Hilton-Davis is that the instructions of the court on strict liability as given to the jury so overstate the burden of the defendant as to taint all claims of the plaintiffs under all theories of recovery. There are four instructions to which Hilton-Davis directs our attention, and we will examine them in detail.

Court's instruction no. 9 stated:

"One who manufacturers or sells any product in a defective condition unreasonably dangerous to the user or consumer or his property is subject to liability for physical harm caused thereby to the ultimate user or consumer or his property if (1) the seller is engaged in the business of selling a product, and (2) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"This rule applies although the manufacturer or seller has exercised all possible care in the preparation and sale of its product and the user or consumer has not bought the product from or entered into any contractual relation with the manufacturer or seller."

Clearly, court's instruction no. 9 is based on Restatement (Second) of Torts, § 402(a) and our decision in Brandenburger. It paraphrases the Restatement except for the

insertion of the words "manufactures" and "manufacturer." It therefore clearly, properly states the law with respect to strict liability in tort.

Court's instruction no. 10 stated:

"The plaintiffs must establish three essential elements to recover, as follows:

"First, that the defendant manufactured and sold a product to a dealer which at the time defendant sold it was in a defective condition unreasonably dangerous to the consumer or user, or his property;

"Second, that the product was expected to and did reach the ultimate consumer or user without substantial change in the condition in which the defendant sold it; and

"Third, that the defective condition in the product caused loss to the plaintiffs, or damage to their property.

"If you find that the plaintiffs have established each of these elements by a preponderance of the evidence, your verdict should be for the plaintiffs."

The objection made by Hilton Davis to court's instruction no. 10 is that it is based on a form instruction contained in Devitt and Blackmar, Federal Jury Practice and Instructions § 82.02. The original form of the instruction contained in Devitt and Blackmar is intended for use in strict liability actions which have resulted in personal injuries. In submitting this instruction to the District Court in this case, the plaintiffs removed references to personal injuries or physical harm and inserted language including "loss" and "damage."

Thus Hilton-Davis argues the District Court gave the jury a personal injury action standard in a property damage case and so overstated the burden of the defendant as to taint all claims under all theories of recovery.

Court's instruction no. 10 clearly stated the elements that the plaintiffs had to prove to establish their case of

- 12 -

strict liability. We are here asked by Hilton-Davis to penalize plaintiffs for utilizing an accepted form instruction and modifying it to fit a property damage case instead of a personal injury case. It is a salutary practice for lawyers to utilize tested instructions adapted to meet their case when offering instructions for acceptance by the court. Such a practice makes it less likely that the court will fall into error. Moreover, beyond the statement that the instruction tainted the other theories of recovery in the case, no explanation is put forward by Hilton-Davis in its briefs as to how this occurs.

Court's instruction no. 11 stated:

"A product is in a defective condition unreasonably dangerous to the user when it has a propensity for causing damage to the user or his property, beyond that which would be contemplated by the ordinary user or consumer who purchases it, with the ordinary knowledge common to the foreseeable class of users as to its characteristics. A product is not defective or unreasonably dangerous merely because it is possible to sustain property damage while using it."

The instruction is obviously based upon comment i, § 402(a), Restatement (Second) of Torts. That comment states:

". . . The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics . . ."

In Stenburg (1978), 176 Mont. 123, 131, 576 P.2d 725, 730, we approved a like instruction in situations where the conditions complained of were latent. Moreover, court's instruction no. 11 properly states the law.

Court's instruction no. 12 stated:

"A product is defective if the use of the product in a manner that is reasonably foreseeable by the manufacturer involves an unreasonable danger that would not be readily recognized by the ordinary user of the product and the manufacturer fails to give adequate warning of such danger."

- 13 -

As to this instruction, Hilton-Davis contends that it misleads the jury into thinking that a product may be defective if it does not perform to 100% of expectations, that it may be defective without any risk to person or property, and that the only risk here was to profits.

As we have indicated, it is the element of inadequacy of warning about the latent side-effects to plaintiffs' property that could arise from the use of Fusarex which brings this case within the strict liability doctrine. Court's instruction no. 12 is an expression of that phase of the strict liability theory. Hilton-Davis' theory that only profits were involved in this case ignores the contentions of plaintiffs that their property, the potato crop itself, was subjected to danger and loss through the lack of warning of Hilton-Davis.

We find no merit in Hilton-Davis' objections to the instructions given in this case relating to strict liability.

Breach of Warranty

The jury in this case was instructed regarding the implied warranties of merchantability and fitness for a particular purpose. The jury found that Hilton-Davis breached an implied warranty. Hilton-Davis now contends that the Fusarex used by Streich was merchantable, because it worked as a sprout suppressant. It also claims that the implied warranty of fitness for a particular purpose did not arise in this case because Hilton-Davis did not know of any particular purpose for which the Fusarex was required or that Streich was relying on Hilton-Davis' judgment or skill in selecting or furnishing the Fusarex.

The District Court refused at the close of plaintiffs' case to dismiss the claims founded upon the theory of breach

of implied warranties of merchantability and fitness. Hilton-Davis claims error in submitting the theory of breach of warranty to the jury.

The implied warranty of merchantability is defined in section 30-2-314, MCA. Unless the implied warranty is excluded or modified, there is a warranty that the goods shall be merchantable implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

The implied warranty of fitness for a particular purpose is found in section 30-2-315, MCA. Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified, an implied warranty that the goods shall be fit for such purpose.

Streich talked with Hilton-Davis' sales representatives concerning the use of Fusarex. They were aware of the particular purpose for which the product was to be used--fall application to seed potatoes. Streich discussed proper use of the product and observed the application and storage techniques of the sales representatives. To be merchantable the Fusarex must have been "fit for the ordinary purposes for which such goods are used." Section 30-2-314(2)(c), MCA. Hilton-Davis would consider that the Fusarex was fit to suppress sprouting, without considering the side-effects which resulted from its use. We find that position an unnecessary stricture to the warranty of fitness of a product for its ordinary purposes. Surely goods are not merchantable, if in their ordinary use, the goods cause damage to the property to which they are applied or harm to

the person using them. For example in Eichenberger v. Wilhelm (N.D. 1976), 244 N.W.2d 691, where the farmer used a chemical to control wild oats, which incidentally damaged his wheat yield, the North Dakota court concluded the product was nonmerchantable as to the merchant selling the chemical, though the chemical controlled wild oats.

Hilton-Davis also contends that there could be no warranty for a particular purpose in this case, contending that the particular purpose warranty contemplates "a use to which the goods are not ordinarily put," citing 3 Anderson, Uniform Commercial Code, § 2-315:37. Hilton-Davis contends that here the only use for which the goods were required was as a sprout suppressant. It further contends that the plaintiffs Boorman and Williamson had no dealings with Fusarex, since they bought their seed potatoes after treatment with Fusarex from Streich.

Here Hilton-Davis' representatives knew the use for which Streich was purchasing the Fusarex, that is, for fall application on his seed potatoes. The ordinary use of Fusarex as a seed suppressant meant a particular use by Streich, the fall application of the suppressant for storage of seed potatoes. Streich has brought himself within the statutory language with respect to implied warranty of fitness for a particular purpose in showing that the "seller at the time of contracting [had] reason to know any particular purpose for which the goods are required."

There is no merit in Hilton-Davis' contention that Williamson and Boorman cannot recover for breach of implied warranties because they had no dealings or contact with Hilton-Davis. The privity requirement was abolished in Montana and a remote manufacturer may be liable for breach of

implied warranties. Whitaker (1977), 173 Mont. 345, 567 P.2d 916. Accord: Plant Food Co-op v. Wolfkill Feed and Fertilizer (9th cir. 1980), 633 F.2d 155.

## Negligence

Hilton-Davis contends that the jury should not have received instructions in this case concerning negligence on its part. It contends that there was no proof that its product was negligently manufactured or that it failed to follow standards of reasonableness in marketing its product. It contends that the burden of proving negligence as set out in Jackson v. William Digwall Company (1965), 145 Mont. 127, 399 P.2d 236, was not sustained by the plaintiffs. It objects to the instructions given by the court because the instructions do not distinguish between the plaintiffs' rights to recover. Specifically that Boorman and Williamson, who had no contact with Hilton-Davis, had purchased none of its product, and should not have been treated exactly the same as the plaintiff Streich.

The plaintiffs respond that the fact that Boorman and Williamson had no contact with Hilton-Davis does not defeat their negligence cause of action. Negligence does not depend upon privity of contract in Montana. In support they cite Larson v. United States Rubber Company (Mont. 1958), 163 F.Supp. 327. Plaintiffs' contend that Hilton-Davis did not use reasonable care in the design, testing, inspection or marketing of Fusarex. The evidence showed that all relevant scientific literature was not utilized by Hilton-Davis; and it conducted no internal testing of Fusarex, but relied on outside studies largely for promotion and sales.

The general duty of a manufacturer placing a product on the market is stated in Golden Gate Hop Ranch, Inc. v.

Velsicol Chemical Corporation (1965), 66 Wash.2d 469, 403 P.2d 351, cert.den. 382 U.S. 1025, 86 S.Ct. 644, 15 L.Ed.2d 539:

> "In the recent case (citation omitted) we laid down the rule that a manufacturer or processor who offers goods on the market to remote users must use reasonable care where there is a foreseeable risk or harm if reasonable care is not used."

Although a manufacturer is not an insurer of a product which he designs or manufacturers, nevertheless, he must use reasonable care to avoid creating an undue risk of harm to those who might be reasonably expected to use his design or product. Guffie v. Erie Strayer Company (3rd cir. 1965), 350 F.2d 378.

The duty to warn of a potential danger unknown to users or consumers is inherent in the manufacture of goods placed on the market. Such duty extends to the purchaser of the product and all foreseeable users. Hopkins v. Chip-In-Saw, Inc. (8th cir. 1980), 630 F.2d 616.

Hilton-Davis objected to the giving of court's instruction no. 21 which raised questions of the "dangerous character of Fusarex" but we will discuss that _infra_ in connection with Hilton-Davis' further contentions on the refused instructions. Hilton-Davis also objected, however, to court's instruction no. 27 which purported to define "legal cause" of injury instead of "proximate cause." In brief, Hilton-Davis contends that instruction no. 27 ignores the requirement of proof of proximate cause mandated by Montana law under Jackson v. William Digwall Company (1965), 145 Mont. 127, 399 P.2d 236.

The transcript reveals that the objection made by Hilton-Davis to court's instruction no. 27 was "that the second paragraph is inappropriate in this case because there

is reference to more than one cause of damage or the acts or omissions of two or more persons working concurrently. There is no claim in this case of any concurrent action and therefore it is strictly inappropriate and would be highly confused within a jury and highly prejudicial to the defendant."

The argument now raised in briefs as to the use of "legal cause" instead of "proximate" cause in the instruction was not raised before the District Court and so the objection will not be considered by us on appeal.

Instructions

Hilton-Davis objected to court's instruction no. 21 which in effect told the jury that a manufacturer had a duty to use reasonable care to give warning of dangerous conditions of a product to those whom he should expect to use the product or be endangered by its probable use. The objection made to the instruction was that there was a connotation of physical harm to persons in the instruction and that the instruction was inappropriate in a property damage case. We find no merit in that objection to court's instruction no. 21, for the reason, as we have stated, that strict liability also applies to damages to property.

Hilton-Davis further contends several of its instructions were refused by the court and with the effect that its theory of defense was not presented to the jury, citing Wollan v. Lord (1963), 142 Mont. 498, 504, 385 P.2d 102, 106. Hilton-Davis' brief then recites:

"Specifically, the defendant's instructions on foreseeability of risk (2) defining unreasonably dangerous (6) defining what would constitute a defect (7) and (8), limiting the scope of strict liability to products which are unreasonably unsafe, not merely ineffective, (11) and defining "dangerous" (12), all were refused. Without these

instructions, which were critical to the defendant's case, the jury substantively was not instructed on defendant's theories. Defendant's right to instructions adaptable to his theories were not given. This was prejudicial error."

The court labors under difficulty with respect to whether instructional error occurred because Hilton-Davis does not specify in its arguments on appeal the reasons for the detrimental effect of the refusal of those instructions. Plaintiffs have responded in their brief that the Hilton-Davis proposed instructions were either inadequate, improperly stated the law, or were covered by other instructions. Our examination of the refused instructions, in the light of the instructions given, shows no apparent error.

ACCORDINGLY, the judgment is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

- 20 -

_____
Justices

Mr. Chief Justice Frank I. Haswell, specially concurring.

I would affirm the judgment of the District Court based on the negligence count. I find no reason or necessity to reach and decide whether the judgment can also be affirmed on the other two counts, viz. strict liability in tort and breach of warranty.

_____
Chief Justice

Mr. Justice Frank B. Morrison, Jr., concurring.

I concur in the result. The purpose of this concurring opinion is to comment on the "legal cause" discussion found in the majority opinion.

Instruction No. 27 states as follows:

"A 'cause' of damage, for our purposes, is that cause which in an actual and continuous sequence, unbroken by any new and independent cause, produces the damage, and without which it would not have occurred.

"This does not mean that the law recognizes only one cause of damage, consisting of only one factor, one act, one element or circumstance, or the conduct of only one person. To the contrary, the acts and omissions of two or more persons may work concurrently as the cause of damage, and in such a case, each of the participating acts or omissions is regarded in law as the cause of the damage."

The above-quoted instruction is not a "legal cause" instruction. The first paragraph of the instruction is a proximate cause instruction. The second paragraph is a concurrent cause instruction.

There is no reversible error in giving Instruction No. 27. However, it is not advisable to give a proximate cause instruction where there are concurrent causes. Instruction No. 27 is internally inconsistent and confusing. The first paragraph instructs the jury that the cause with which they are concerned must have been such that, without the cause, the damage would not have ensued. This is the old "but for" rule.

The second paragraph of Instruction No. 27 is a standard concurrent cause instruction which permits the finding of causation if two causes work concurrently to produce damage. Clearly, the instruction confuses the jury because this paragraph of the instruction does not require a finding by the jury that the accident would not have occurred, but for the cause being examined.

22

It certainly was not reversible error to give a proximate cause instruction combined with a concurrent negligence instruction. Unfortunately, that has been done for years in Montana. However, it should not be done in the future.

All legal authorities now recognize that, where there are concurrent causes, a legal cause instruction should be given. BAJI 3.76 sets forth that instruction as follows:

> "A legal cause of injury, damage, loss or harm is a cause which is a substantial factor in bringing about the injury, damage, loss or harm."

The note below the BAJI instruction states:

> "Where injury may have resulted from either of two causes operating alone, this Instruction 3.76 on legal cause should be given and not Instruction 3.75 on proximate cause. (emphasis supplied)"

BAJI instruction 3.76 is taken from Restatement of Torts, 2d Section 431, p. 428, wherein it is stated:

> "The actor's negligent conduct is a legal cause of harm to another if
>
> "(a)  his conduct is a substantial factor in bringing about the harm, and
>
> "(b)  there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm."

Prosser, Torts, 4th Ed., Section 11, p. 240, states:

> ". . . It has been considered that 'substantial factor' is a phrase sufficiently intelligible to the layman to furnish an adequate guide in instructions to the jury, and that it is neither possible nor desirable to reduce it to any lower terms. As applied to the fact of causation alone, no better test has been devised.
>
> "Such a formula, for it can scarcely be called a test, is clearly an improvement over the 'but for' rule. . . ."

The substantial factor test found in the legal cause rule is preferable and less confusing. It should be given where there is more than one potential cause.

Here, the district court gave the old "but for" rule combined with an instruction on concurrent cause. Such

23

practice should, in the future, be discouraged but does not constitute reversible error.

_____
Justice

Mr. Justice Daniel J. Shea:

I join in the special concurring opinion of Mr. Justice Morrison.

_____
Justice

24