JUSTICE TRIEWEILER
dissenting.
I dissent from the majority opinion.
In Montana, manufacturers are strictly hable for defective products which are unreasonably dangerous to the user when the product causes damage or injury to the user. Section 21-1-719, MCA (1987). We have previously held that a product is in a defective condition and is unreasonably dangerous to the user when it has a propensity for *346 causing damage to the user or his property beyond that which would be contemplated by the ordinary user or consumer who purchases the product. Stretch v. Hilton-Davis Div. of Sterling Drug, Inc. (1984), 214 Mont. 44, 57, 692 P.2d 440, 447. We have also held that a product is defective if, when used in a manner reasonably foreseeable by the manufacturer, an unreasonable danger is presented which would not be recognized by the ordinary user without a warning. Stretch, 214 Mont. at 57, 692 P.2d at 447.
Based on the undisputed facts in this case, the Escort being operated by Bertram James Wise presented a hazard beyond what would be contemplated by the ordinary consumer and the hazard presented an unreasonable danger which could only be eliminated by an adequate warning. No one that I know believes that when they drive their car into a car wash there is a significant possibility that the driver’s side window could shatter and seriously injure them. If Ford knew that its vehicle created a significant risk of that type, it had a duty to warn its customers of that fact.
The majority concludes that the following testimony from Ford’s factory representative created issues of fact which were properly resolved by the jury:
1. The same type of glass used in this vehicle was used by all manufacturers;
2. All manufacturers of motor vehicles have similar problems with shattered glass;
3. The design feature which led to a high incidence of shattered glass in Ford Escorts was not present in 1987 models; and
4. It was the opinion of Ford’s expert/representative that the window in the Wise vehicle shattered because of a preexisting scratch or chip.
The problem with the evidence relied on by the majority is that it was either disproved by documents found in Ford’s possession, or was opinion evidence given without factual foundation. Furthermore, the plaintiff was denied the opportunity to refute the unfounded opinion evidence by Ford’s loss of the vehicle part in question.
The following documents were discovered from the defendant during the course of this litigation:
1. A bulletin from the International Car Wash Association to car wash operators dated July 1991 which stated the following:
SPECIAL ALERT TO CAR WASH OPERATORS
RE: FORD MOTOR COMPANY LYNX AND ESCORT MODELS
*347 Car wash operators from the across the nation are reporting problems with Ford Motor Company’s Lynx and Escort model cars of various years’ vintage with the side windows virtually exploding in the car wash or after the customer leaves the car wash.
For no specific action or reason, car wash operators are reporting that side front windows on these automobiles are virtually exploding either in the car wash itself, the finishing area of the car wash, or while customers are driving on the streets. In most cases, the window pops and completely disintegrates for no apparent reason. Early investigation shows no apparent reason for these mishaps and they are being observed under a variety of different circumstances. The Ford Motor Company has been contacted on this problem, and at the present has no answers for the occurrences. ICA therefore advises car wash operators to in turn advise their customers that if they have this problem to return the car to their Ford Motor Company dealer for appropriate action.
2. A proposed letter from Bill Dana, President, Mike’s Carwashes, Inc. (presumably to other car wash operators):

THE MYSTERIOUS POPPING WINDOW

Dear Ford Escort and Mercury Lynx Owners,
In the past few years, we have had several instances of Escort and Lynx cars in which the side windows have disintegrated either in the car wash or even after leaving.
This is NOT a problem unique to Mike’s Carwashes. Please see the Special Bulletin from the International Carwash Association posted on this bulletin board.
At Mike’s we wash over a million cars a year and in 1990 we had 12 such incidents; so far in 1991 we have had 6. Also, we have not experienced “popping windows” on any other make or model of car in our 43 year history.
However, because of increased insurance claims on these vehicles, which in turn can increase prices for all Mike’s car wash customers, we feel it only fair to institute the following policy:
As of July 1,1991, we can no longer be responsible for breakage of side windows on Ford Escort and Mercury Lynx automobiles. You will be using our car wash at your own risk.
We apologize for any inconvenience this may cause you.
Sincerely,
(signature) Bill Dana, President,
*348 Mike’s Carwashes, Inc.
(Underlining added.)
3. On October 21, 1991, Ford Motor Company generated the following interoffice memorandum in response to the previous two documents:
BACKCtROUND
The Escort window concern has existed on the 1981 Escort forward with each model year up to 1991: the rate of incidence has lessened. No TSB article was published because of the sensitivity of the issue. Repair instructions were conveyed to the districts by word-of-mouth ....
POSSIBLE CAUSE ESCORT WINDOW
The most likely cause is the window frame being misaligned, causing a stress on the door glass. A sudden temperature or pressure change (e.g. from a car wash) could cause the. glass to shatter. Our experience to date indicates that once anew door glass is installed, the concern does not reoccur.
CONCLUSION
Import service engineering has no reports for this concern on the new style Escort. No TSB action is planned on the old style Escort due to the sensitivity of the concern.
(Underlining added.)
4. Ford interoffice memorandum dated April 6,1992:
Subject: Escort “Popping” Window
Current Status:
Door glass breakage at car washes was a major problem on the 19851/286 MY Escort/Lynx due to the over-torquing of the window mechanism. The letter from the International Car Wash Association dated 1991 refers to problems on the Escort and Lynx. Although no model year is mentioned, the Lynx was last produced for the 1987 MY. Due to the “non-emergency” designation by body and direction to use the old parts, the model years containing old design parts are 19851/2 1986, and much of 1987.
Due to the sensitive nature of the problem and the visibility in the press, it is not recommended to contact either the International Car Wash Association or Mike’s Carwashes.
*349 (Underlining added.)
In other words, we know from documents in Ford’s possession that whether or not other manufacturers used the same type of glass, car washes were not experiencing the same type of problems from cars other than the Ford Escort and Mercury Lynx. We also know that even though the window assembly had been redesigned prior to 1987, the change was treated on a “non-emergency” basis so that most of the cars manufactured in 1987 still had old design parts, and Wise’s vehicle was manufactured in the early part of 1987. We also know from Ford’s interoffice memorandum that the problem of popping windows started with the 1981 Escort and was present on models manufactured up to 1991. Furthermore, although Ford’s expert/representative testified that in his opinion the shattered glass in Wise’s vehicle was most likely the result of a scratch or chip, he admitted that he had never inspected the window and therefore had no basis for that opinion, and the door of the vehicle which was purchased by Ford specifically for testing was lost so that no one other than Ford could test it. Finally, the owner’s uncontradicted testimony was that no scratch or chip was present prior to the time the window shattered. We have stated the test for a directed verdict as follows:
The test commonly employed to determine if the evidence is legally sufficient to withdraw cases and issues from the jury is whether reasonable men could draw different conclusions from the evidence. If only one conclusion is reasonably proper, then the directed verdict is proper.
Semensa v. Leitzke (1988), 232 Mont. 15, 18, 754 P.2d 509, 511 (citation omitted).
In this case, based on Ford’s own documents, reasonable persons could not disagree that Ford Escorts manufactured from 1981 through the 1990 model year had a propensity for causing damage to the user beyond that which would be contemplated by the ordinary motor vehicle operator, and that Ford, because of the issue’s “sensitivity,” failed to warn users of the potential danger or even respond when car wash operators asked for guidance because of the frequency with which the windows were shattering.
For these reasons, the vehicle in which Bertram James Wise was injured, was, by our prior definitions, a defective product which caused his injury. The issues were simple factually and legally. Car windows are not designed to shatter from the pressure of a car wash. If they are, they are dangerous and the owners of the vehicle should be warned. This window did shatter. The owner was not forewarned, *350 even though Ford knew of the risk. No warning was given because of the Company’s determination that it would not be in the Company’s best interest to do so. Ford’s discredited testimony notwithstanding, Wise was entitled to a directed verdict.
For these reasons, I dissent from the majority opinion.
JUSTICE HUNT joins in the foregoing dissenting opinion.